**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| PETRO-HUNT, L.L.C. | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. 00-512L<br>Judge Allegra |
| THE UNITED STATES OF AMERICA, | ) | |
| Defendant. | ) | |

**FIRST AMENDED COMPLAINT**

Pursuant to the Rules of the U.S. Court of Federal Claims, Petro-Hunt L.L.C., by counsel, respectfully submits its First Amended Complaint, and alleges as follows:

**PARTIES**

1. Plaintiff, Petro-Hunt, L.L.C. ("Petro-Hunt"), a Limited Liability Company organized under the laws of the State of Delaware having its principal place of business in Dallas, Texas, is primarily engaged in the business of oil and gas exploration and production as the owner and operator of mineral properties in and around the United States.

2. Defendant, United States of America, acting through the Department of Interior and Department of Agriculture, is a republic formed pursuant to the U.S. Constitution, and exercising the powers therein subject to certain limitations including (1) the Fifth Amendment to the U.S. Constitution, which prohibits the taking of private property without payment of just compensation, (2) statutes, including the Tucker Act, that provide limited waivers of the government's sovereign immunity, and (3) regulations prescribing its authority.

3. Petro-Hunt is the owner of a 64.28572% undivided interest in a mineral estate

located in the Kisatchie National Forest.[1]

**JURISDICTION**

4. This court has jurisdiction of this case under 28 U.S.C. § 1491 (the Tucker Act) as a "claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department or upon any express or implied contract with the United States…" seeking damages in excess of the minimum threshold.

**NATURE OF THE CASE**

5. Plaintiff seeks a judgment and related damages for a taking of its property, in the form of mineral rights, without just compensation and, alternatively, for breach of contract by the United States.

6. The United States made certain representations to land owners that mineral rights which had already been transferred to another entity created by the land owners would remain in perpetuity with that entity if the land owners sold their surface rights to the United States.

7. The land owners relied on these representations in deciding to sell their surface land to the United States for inclusion in the national forest system, and the compensation paid by the United States excluded the value of the mineral estate.

8. The United States, contrary to its representations and in breach of material implied terms of the conveyances, subsequently sought to be declared the owner of the mineral estate without having paid just compensation.

9. Plaintiff now comes before this Court seeking a judgment and relief related to claims arising under the Constitution and the Tucker Act.

---

1 The other co-owners of the mineral estate are Kingfisher Resources, Inc., which owns an 18.90756% undivided interest, and Hunt Petroleum Corporation, which owns a 16.80672% undivided interest.

## FACTS

A. Formation of the Mineral Estate

10. Prior to 1932, Bodcaw Lumber Company of Louisiana ("Bodcaw Lumber"), Grant Timber & Manufacturing Company of Louisiana, Inc. ("Grant Timber"), Good Pine Lumber Company of Louisiana, Inc., Trout Creek Lumber Company of Louisiana, Inc., and Tall Timber Lumber Company of Louisiana, Inc. separately owned large non-contiguous tracts of land located in Winn, Grant, and Natchitoches parishes in Louisiana.

11. These five lumber companies organized the Good Pine Oil Company ("Good Pine Oil") on or about 1932 and vested it with the exclusive rights to explore mineral deposits in the subsurface of certain parcels of their land in Louisiana.

12. Good Pine Oil was a joint venture of the five lumber companies.

13. Pursuant to six mineral conveyances executed between November, 1932 through May, 1934, Bodcaw Lumber and Grant Timber transferred their mineral rights in 180,000 acres of land to Good Pine Oil. *See* Exhibit 1.

14. Bodcaw Lumber and Grant Timber believed that valuable timber, oil, and gas existed on and underneath the 180,000 acres conveyed to Good Pine Oil.

15. Bodcaw Lumber and Grant Timber reserved the surface rights to the 180,000 acres to themselves in the conveyances of the mineral rights to Good Pine Oil. *See* Exhibit 1.

16. Good Pine Oil was formed to pool the mineral rights of the five lumber companies with respect to the overall parcels of land, including the 180,000 acres conveyed by Bodcaw Lumber and Grant Timber, to secure more favorable exploration and development.

17. The five lumber companies agreed that each would share in any production

obtained from the pooled acreage in proportion to the acreage that each lumber company contributed to the pool.

18. The deeds recited that the minerals were conveyed to Good Pine Oil, its successors and assigns, forever and that the vendors (including Bodcaw Lumber and Grant Timber) intended to confer upon the vendee absolutely and without limit for time of its enjoyment any and every right, title and interest that the vendors had in the minerals conveyed.

19. The 180,000 non-contiguous acres contributed by Bodcaw Lumber and Grant Timber constituted 96 mineral servitudes owned by Good Pine Oil and its successors and assigns.[2]

B. Establishment of the U.S. National Forest System

20. In 1911, Congress enacted enabling legislation (the "Weeks Act") to create the U.S. Forest Service and authorizing it to purchase lands throughout the United States to establish the national forest system.

21. A federal entity known as the National Forest Reservation Commission ("NFRC") was established to identify forest lands for acquisition.

22. The NFRC was the final authority for determining the forest lands to be bought and the terms and conditions of sale.

23. The Weeks Act expressly allowed mineral reservations as consistent with the purpose for which the land was acquired, i.e. the establishment of national forests.

2 A "servitude" is essentially a right of use. A mineral servitude conveys the right to explore for and produce the minerals on the property. Common law states allow minerals to be permanently severed. There is no direct common-law equivalent to a Louisiana mineral servitude. *Texaco v. La. Land & Exploration,* 136 B.R. 658 (M.D. La. 1992). However, every other state allows minerals to be permanently severed from the surface.

24. Section 9 of the Weeks Act states: "that such acquisition may in any case be conditioned upon the exception and reservation to the owner from whom title passes to the United States of the minerals and of the merchantable timber, or either or any part of them within or upon such lands at the date of the conveyance…" 36 Stat. 962 c. 186, Sec. 9.

25. The NFRC had adopted the policy of purchasing lands subject to the reservation of mineral rights in perpetuity.

26. The Commission had also taken the position that it was without authority to purchase mineral rights with funds that had been appropriated for the acquisition of lands for national forest purposes.

27. The NFRC recognized that properties in Louisiana were likely to be subject to mineral reservations, especially for oil and gas, given the known geological characteristics of the lands.

C. U.S. Government Experiences Difficulty Purchasing Lands In Louisiana

28. Prior to the year 1936, the United States was interested in purchasing lands in Louisiana for national forest purposes.

29. The United States found that owners of large tracts of land were unwilling to sell their lands because of court decisions holding that the sale or reservation of mineral rights in Louisiana created only a "right in the nature of a servitude" which was subject to prescription by ten years non-use.

30. Duly authorized agents of the United States approached duly authorized representatives of Bodcaw Lumber and Grant Timber seeking to acquire large tracts of land for inclusion in the national forest system.

31. Upon information and belief, Bodcaw Lumber and Grant Timber refused to sell based on their belief that their valuable mineral rights would prescribe from Good Pine Oil (the holder of the mineral estate), to the United States, and not to Bodcaw Lumber and Grant Timber, the private owners of the surface estate, if they sold their surface estates to the United States.

32. The United States Department of Agriculture did not agree that the Louisiana law of prescription of mineral servitudes applied to purchases of land by the United States for the national forest system.

33. On May 29, 1935, the United States Department of Agriculture, Forest Service, produced an opinion of the Assistant Solicitor of the Department of Agriculture to Bodcaw Lumber and Grant Timber to the effect that the prescriptive provisions of the Louisiana Civil Code would not apply to lands sold to the United States for national forest purposes.

34. Upon information and belief, authorized agents of the United States represented to Bodcaw Lumber and Grant Timber that the Louisiana law of prescription of mineral servitudes would not apply if they sold their lands to the United States prior to 1935.

35. These representations were intended to induce the sale of the surface estate by Bodcaw Lumber and Grant Timber to the United States.

36. In reliance on these representations, Bodcaw Lumber and Grant Timber agreed to sell to the United States the surface estate of various tracts of timber land.

D. <u>Bodcaw Lumber and Grant Timber Sell their Surface Estate to the United States</u>

37. From November 1934 through January 1937, the United States, acting through the Department of Agriculture, Forest Service, acquired the surface rights, pursuant to the Weeks Act, to approximately 180,000 acres of land located in Grant, Winn and Natchitoches Parishes

from Bodcaw Lumber and Grant Timber.

38. These transactions were accomplished through eleven different conveyances -- nine deeds and two expropriation judgments. *See* Exhibit 2.

39. At the time of the acquisitions, all of the surface lands acquired by the United States from Bodcaw Lumber and Grant Timber were burdened by the 96 mineral servitudes owned by Good Pine Oil.

40. These lands were purchased by the United States for inclusion in the Kisatchie National Forest and were specifically conveyed to it subject to the prior sale of all the minerals by Bodcaw Lumber and Grant Timber to Good Pine Oil.

41. These deeds were designed to confer a benefit on Good Pine Oil and any successors-in-interest by expressly excluding the mineral estate from the transactions.

42. The consideration paid by the United States under the various conveyances did not include the value of any mineral rights in the 96 servitudes.

43. The minerals underlying the lands had previously been conveyed to Good Pine Oil, which was owned by Bodcaw Lumber, Grant Timber, and others.

44. Bodcaw Lumber and Grant Timber did not own any minerals or mineral rights that they could sell to the United States.

45. Bodcaw Lumber and Grant Timber could also not reserve or sell the expectation of a servitude lapsed for non-use.

46. All that remained for Bodcaw Lumber and Grant Timber to sell to the United States was the surface lands.

47. At the time the sales were made, the officers and directors of Bodcaw Lumber and

Grant Timber believed that the mineral rights in the lands sold were valuable and that the consideration paid by the United States for the surface lands acquired under the various deeds did not reflect the value of any mineral rights contained in the 96 servitudes.

48. Bodcaw Lumber and Grant Timber would not have sold the surface lands to the United States had representatives of the United States then taken the position that the prescriptive provisions of the Louisiana Civil Code would be applicable to the minerals under the surface lands sold.

49. At the time the United States purchased the surface estate from Bodcaw Lumber and Grant Timber, the United States knew and understood that it was not purchasing any of the minerals that had previously been sold to Good Pine Oil.

50. At the time the United States purchased the surface estate from Bodcaw Lumber and Grant Timber, the United States knew and understood that its duly authorized representatives had concluded that the Louisiana law with respect to prescription of servitudes would not apply and the United States would not acquire title to the mineral estate.

51. On December 29, 1941, Good Pine Oil Company conveyed all of its mineral interests in this property to William C. Brown, who, on January 20, 1942, conveyed all of his interests to Nebo Oil Company. *See* Exhibit 3.

52. Petro-Hunt, L.L.C is the owner of an approximately 64.3% undivided interest in the mineral interests conveyed to Nebo Oil Company as a result of, *inter alia*, the conveyance and transactions listed on Exhibit 3 as a successor-in-interest.[3]

E. Federal Courts Deny United States' Claims to Ownership of the Mineral Estate

3 Hunt Petroleum and Kingfisher Resources own their respective undivided interests via the same conveyances and transactions listed on Exhibit 3.

53. In 1948, the United States filed suit for declaratory judgment in the Western District of Louisiana asserting ownership to a portion of the mineral rights previously reserved in perpetuity to Nebo Oil Company ("Nebo Oil"), as the successor in interest to all of Good Pine Oil's mineral rights.

54. The United States argued that the mineral rights in a certain parcel had lapsed for 10 years non-use, and therefore under Louisiana law had prescribed to and were owned by the United States.

55. The United States' position in the declaratory judgment action was contrary to the representations it made during negotiations for the sale of the surface lands, namely that the Louisiana law of prescription would not apply to lands acquired by the United States.

56. After a trial and appeal, the Fifth Circuit affirmed the district court's ruling that Nebo Oil owned the mineral estate and held that the Louisiana law of prescription for 10 years' non-use did not apply. *See United States v. Nebo Oil Co.*, 90 F. Supp. 73 (W.D. La. 1950), *aff'd*, 190 F.2d 1003 (5th Cir. 1951).

57. Subsequent to the Fifth Circuit's decision, Nebo Oil placed an affidavit in the land records of Louisiana wherein it claimed title to all of the property described in Exhibit 4 (hereinafter "Plaintiff's Mineral Estate").[4] This is the same property conveyed to Good Pine Oil through the six conveyance instruments described in Exhibit 1.

58. The land records of the United States Forest Service also reflected that the minerals underlying the land conveyed to it by the instruments described in Exhibit 2 were held

4 Said affidavit of ownership can be found in Conveyance Book 99, Folio 93, Entry No. 47969, in the records of Grant Parish; Conveyance Book 73, Folio 314, Entry No. 49398, in the records of Winn Parish; and Conveyance Book 216, Folio 331, Entry No. 97034, in the records of Natchitoches Parish. Grant, Winn and Natchitoches Parishes are all located within the State of Louisiana.

in ownership by others in perpetuity up to and including the year 2000.

59. Petro-Hunt and its predecessors-in-interest exercised their ownership of Plaintiff's Mineral Estate in a manner consistent with the Fifth Circuit's holding in *U.S. v. Nebo Oil Company*, 190 F.2d 1003 (5th Cir. 1951).

F. The United States Disregards the Fifth Circuit's *Nebo Oil* Decision and Conveyances Reserving Mineral Rights to Petro-Hunt by Issuing Mineral Leases on the Servitudes Owned by Petro-Hunt

60. The United States, acting through the Department of the Interior's Bureau of Land Management ("BLM") and the Department of Agriculture's Forest Service, issued mineral leases to third parties to certain lands in the Kisatchie National Forest within Plaintiff's Mineral Estate that were burdened by the 96 mineral servitudes that originally ran in favor of Good Pine Oil, followed by its successors-in-interest ending in Petro-Hunt at various times.

61. Petro-Hunt, along with its co-owners, disputed the issuance of these leases as they affected mineral rights within Plaintiff's Mineral Estate, which had been preserved in perpetuity per the deeds of conveyance to Good Pine Oil and the Fifth Circuit's decision in *Nebo Oil*.

62. Petro-Hunt along with its co-owners pursued relief through administrative process before the U.S. Department of the Interior.

63. The United States continued to issue leases for land within Plaintiff's Mineral Estate despite Petro-Hunt's objections.

64. The United States received valuable lease payments for land within Plaintiff's Mineral Estate.

65. Plaintiff was prevented from exercising its full use and enjoyment of its Mineral Estate during the period in which the United States issued the mineral leases and was deprived of

valuable economic activity, including but not limited to exploration, leasing, and sales.

G. Litigation Arising From the United States' Issuance of the Mineral Leases

66. In response to BLM's issuance of the mineral leases, Petro-Hunt, along with other co-owners of Plaintiff's Mineral Estate, brought suit under the Quiet Title Act on February 18, 2000 in the Western District of Louisiana seeking a declaration that it was the owner in perpetuity of Plaintiff's Mineral Estate (the "Quiet Title action").

67. Later that same year, on August 24, 2000, Petro-Hunt filed a Complaint in this Court alleging facts similar to those alleged in this First Amended Complaint, and arising from the same transactions, acts and occurrences, requesting just compensation under the Fifth Amendment.

68. The Court granted a stay in this case on Petro-Hunt's motion pending the outcome of the Quiet Title action.

69. The Fifth Circuit ultimately held in the Quiet Title action that Plaintiff remained the owner of 5 servitudes and the United States owned 91 servitudes.

70. The United States did not dispute that the Plaintiff, via various conveyances, is a successor-in-interest to the mineral servitudes that had been previously owned by Good Pine Oil and later Nebo Oil Company, in the Quiet Title action.

## CLAIMS FOR RELIEF

### Count I – Permanent Taking of the Ninety-Six Servitudes

71. Plaintiff incorporates the allegations raised in the preceding paragraphs (¶¶ 1 -70).

72. The U.S. Constitution requires that the United States pay just compensation to private property owners for all property taken for public use.

73. To date, the United States has paid nothing to Petro-Hunt or any of its predecessors-in-interest for the valuable mineral estate it has taken for public use in violation of the U.S. Constitution.

74. As a result of its acts and omissions, the United States has permanently taken the 96 servitudes previously owned by Petro-Hunt, which pursuant to the representations of the government were not subject to prescription, less and except the value of the servitudes which the Fifth Circuit held were now subject to prescription.

75. Petro-Hunt has been damaged as a result of the United States' conduct in an amount to be determined equal to the just compensation due under the Fifth Amendment.

76. Petro-Hunt brings this action seeking an award of just compensation under the Fifth Amendment to the Constitution for the value of mineral rights owned by plaintiff that have been taken by the United States without compensation.

**Count II – Temporary Taking of the Ninety-One Servitudes**

77. Plaintiff incorporates the allegations raised in the preceding paragraphs (¶¶ 1 - 70).

78. The U.S. Constitution requires that the United States pay just compensation to private property owners for all property taken for public use.

79. To date, the United States had paid nothing to Petro-Hunt or any of its predecessors-in-interest for the valuable mineral estate it has taken for public use in violation of the U.S. Constitution.

80. The United States engaged in a temporary taking by asserting ownership of the 91 servitudes before and during the Quiet Title action.

81. The United States engaged in a temporary taking by issuing mineral leases to third parties that were then within the Plaintiff's Mineral Estate.

82. The United States' position effectively blocked Petro-Hunt from engaging in any activity on the servitudes, precluded Petro-Hunt from leasing activity, and diminished the value to prospective buyers.

83. Petro-Hunt has been damaged as a result of the United States' conduct in an amount to be determined equal to the just compensation due under the Fifth Amendment. During the temporary taking, the United States received valuable lease payments for property then owned by Petro-Hunt.

84. Petro-Hunt brings this action seeking an award of just compensation under the Fifth Amendment to the Constitution for the value of mineral rights owned by plaintiff which have been taken by the United States.

**Count III – Temporary Taking of the Five Servitudes**

85. Plaintiff incorporates the allegations raised in the preceding paragraphs (¶¶ 1 - 70).

86. The U.S. Constitution requires that the United States pay just compensation to private property owners for all property taken for public use.

87. To date, the United States has paid nothing to Petro-Hunt or any of its predecessors-in-interest for the valuable mineral estate it has taken for public use in violation of the U.S. Constitution.

88. The United States engaged in a temporary taking by asserting ownership of the 5 servitudes before and during the Quiet Title action.

89. The United States engaged in a temporary taking by issuing mineral leases to third parties that were within the Plaintiff's Mineral Estate.

90. The United States effectively blocked Petro-Hunt from engaging in any activity on the 5 servitudes, precluded Petro-Hunt from leasing activity, and diminished the value to

prospective buyers.

91. During the temporary taking, the United States received valuable lease payments for property owned by Petro-Hunt.

92. Petro-Hunt has been damaged as a result of the United States' conduct in an amount to be determined equal to the just compensation due under the Fifth Amendment.

**Count IV – Breach of Contract**

93. Plaintiff incorporates the allegations raised in the preceding paragraphs (¶¶ 1 - 70).

94. Plaintiff, as a successor-in-interest to Good Pine Oil, the alter ego of Bodcaw Lumber and Grant Timber, which were parties to the conveyances of the surface estates to the United States, has complied in all material respects with its obligations under the various land and mineral conveyances.

95. The United States, as a party to those land conveyances, has breached its obligations by repudiating material terms of the parties' agreement and understanding with respect to the reservations of the mineral estate to Good Pine Oil, its successors and assigns, including Plaintiff.

96. The United States' breach of contract entitles Plaintiff to (a) restitution damages equal to the value of the mineral estate acquired without payment by the United States; (b) reliance damages equal to the value of the mineral estate acquired without payment by the United States; (c) expectation damages equal to the profits that Plaintiff would have earned from the development of the mineral estate had the United States not committed a breach; (d) damages sustained by Petro-Hunt resulting from the United States' anticipatory repudiation of the terms and conditions of sale for the various tracts; and (e) other appropriate contract damages for losses sustained by Petro-Hunt as the result of wrongful acts by the United States.

**Count V – Breach of Contract for Implied Third-Party Beneficiary or Stipulation Pour Autri**

97. Plaintiff incorporates the allegations raised in the preceding paragraphs (¶¶ 1 - 70).

98. In the alternative, Plaintiff as a third party beneficiary of the conveyances of the surface estate from Bodcaw Lumber and Grant Timber to the United States, has complied in all material respects with its obligations under the various mineral conveyances.

99. Plaintiff specifically pleads and claims the benefit of Louisiana law regarding Stipulation Pour Autri, pursuant to Louisiana Civil Code Articles 1978-1982.

100. The United States, as a party to the conveyances from Bodcaw Lumber and Grant Timber, has breached its obligations to Plaintiff, an intended third-party beneficiary, by repudiating the material terms of the agreement and understanding between Bodcaw Lumber and Grant Timber, on the one hand, and the United States, on the other hand, with respect to recognizing that the mineral rights were to be retained in perpetuity by Good Pine Oil and its successors-in-interest.

101. The United States' breach of contract entitles Plaintiff to (a) restitution damages equal to the value of the mineral estate acquired without payment by the United States; (b) reliance damages equal to the value of the mineral estate acquired without payment by the United States; (c) expectation damages equal to the profits that Plaintiff would have earned from the development of the mineral estate had the United States not committed a breach; (d) damages sustained by Petro-Hunt resulting from the United States' anticipatory repudiation of the terms and conditions of sale for the various tracts; and (e) other appropriate contract damages for losses sustained by Petro-Hunt as the result of wrongful acts by the United States.

**Count VI – Breach of the Covenant of Good Faith and Fair Dealing**

102. Plaintiff incorporates the allegations raised in the preceding paragraphs (¶¶ 1 - 70).

103. In the alternative, Petro-Hunt seeks money damages and other appropriate relief in its capacity as a party in privity or as a third party beneficiary to the conveyances of land to the United States arising from Defendant's breach of the implied covenant of good faith and fair dealing.

104. Plaintiff has complied in all material respects with its obligations under the various mineral conveyances.

105. The United States, as a party to those conveyances, has breached its obligations to Plaintiff, either as the party in privity or as an intended third-party beneficiary, by repudiating the material terms of the agreement and understanding between Bodcaw Lumber and Grant Timber, on the one hand, and the United States, on the other hand, with respect to recognizing that the mineral rights were to be retained in perpetuity by Good Pine Oil and its successors-in-interest.

106. The representations made by the United States to Bodcaw Lumber and Grant Timber, that the mineral estate would not prescribe, were made with the intent to induce Bodcaw Lumber and Grant Timber to sell the surface estate to the United States.

107. The representations made by the United States to Bodcaw Lumber and Grant Timber, that the mineral estate would not prescribe, directly resulted in the sale of the surface estate to the United States.

108. The United States later claimed ownership of certain of Plaintiff's Mineral Estate in 1948, contrary to the very representations made by its duly authorized agents on or around the date of the sale of the surface estate of the various tracts of land.

109. The United States then issued leases for certain parts of Plaintiff's Mineral Estates despite the Fifth Circuit's ruling in *Nebo Oil*.

110. During the Quiet Title action, the United States asserted ownership to certain parts of Plaintiff's Mineral Estate through prescription, despite its previous representations that the Louisiana law of prescription did not apply to lands acquired by the United States and that the mineral estate vested in Good Pine Oil and its successors would therefore be perpetual.

111. The acts of the United States set forth in ¶¶ 1 - 110 above breached the covenant of good faith and fair dealing.

112. The United States' breach of the covenant of good faith and fair dealing entitles Plaintiff to (a) restitution damages equal to the value of the mineral estate acquired without payment by the United States; (b) reliance damages equal to the value of the mineral estate acquired without payment by the United States; (c) expectation damages equal to the profits that Plaintiff would have earned from the development of the mineral estate had the United States not committed a breach; (d) damages sustained by Petro-Hunt resulting from the United States' anticipatory repudiation of the terms and conditions of sale for the various tracts; and (e) other appropriate contract damages for losses sustained by Petro-Hunt as the result of wrongful acts by the United States.

**Count VII - Reformation**

113. Plaintiff incorporates the allegations raised in the preceding paragraphs (¶¶ 1 - 70).

114. In the alternative, Petro-Hunt seeks reformation of the conveyance instruments in which Bodcaw Lumber and Grant Timber conveyed the surface estate to reflect the true intentions of the parties, as expressed in the written and oral statements provided to Bodcaw Lumber and Grant Timber by the United States that the mineral rights would never prescribe as long as the United States owned the surface.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for relief as follows:

1. A money judgment equal to the just compensation owing to Plaintiff for the permanent taking of its property for public use, together with interest thereon at the legal rate from the date of the taking;

2. A money judgment equal to the just compensation owing to Plaintiff for the temporary taking of its property for public use, together with interest thereon at the legal rate from the date of the taking;

3. A money judgment equal to the damages owing to Plaintiff for the breach of contract by the United States under the alternative theories of restitution, reliance, expectation of damages, anticipatory repudiation, and, together with interest thereon at the legal rate;

4. Attorneys' fees associated with bringing this action, including but not limited to those available under the Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970, (42 U.S.C. § 4654(c));

5. The expenses of appraisers and other experts reasonably required to prosecute this action;

6. All other reasonable costs associated with bringing this action;

7. Such other and further relief as the Court deems just.

Respectfully Submitted,

*Attorneys for Plaintiff*

s/J. Ralph White
J. Ralph White
*Counsel of Record*
THE LAW OFFICE OF J. RALPH WHITE, PLLC
650 Poydras Street, Suite 1605
New Orleans, Louisiana 70130
Telephone: 504-799-2585
Facsimile: 504-799-2588
E-Mail: jralphwhitepllc@bellsouth.net

*Of Counsel:*
D. Joe Smith
Edmund M. Amorosi
SMITH PACHTER MCWHORTER PLC
8000 Towers Crescent Drive, Suite 900
Vienna, Virginia 22182
Telephone: 703-847-6300
Facsimile: 703-847-6312
E-Mail: eamorosi@smithpachter.com

Dated: June 25, 2008

**CERTIFICATE OF ELECTRONIC FILING AND SERVICE**

I hereby certify that on this 25th day of June, 2008, Plaintiff's First Amended Complaint was filed electronically. I understand that notice of this filing will be sent to counsel for the Defendant by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/J. Ralph White
J. Ralph White

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| PETRO-HUNT, L.L.C.<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA<br><br>Defendant. | Case No. 00-512L<br>Judge Allegra |

**CORPORATE DISCLOSURE STATEMENT**

Pursuant to RCFC 7.1, Plaintiff Petro-Hunt, L.L.C. provides the following corporate disclosure statement to the Court:

1. Petro-Hunt, L.L.C. is a Delaware limited liability company and is wholly owned by the William Herbert Hunt Trust Estate, a Texas Trust.

2. Neither Petro-Hunt, nor the parent trust, are publicly traded entities. Both are privately held.

Respectfully Submitted,

s/J. Ralph White

J. RALPH WHITE
*Counsel of Record*
The White Law Firm
650 Poydras Street
Suite 1605
New Orleans, Louisiana 70130
Telephone: 504-799-2585
Facsimile: 504-799-2588

and

*Of Counsel:*

D. Joe Smith
Edmund M. Amorosi
SMITH PACHTER MCWHORTER PLC
8000 Towers Crescent Drive, Suite 900
Vienna, Virginia 22182
Telephone: 703-847-6300
Facsimile: 703-847-6312

*Attorneys for Plaintiff*

Dated: June 25, 2008

**Exhibit 1**

The conveyances made in 1935 and 1936 from Bodcaw Lumber and Grant Timber to Good Pine Oil are described as follows:

(a) Sale of Minerals from Bodcaw Lumber Company of Louisiana, Inc. to Good Pine Oil Company, Inc. dated November 12, 1932, recorded in Conveyance Book 168, Folio 419, Entry No. 63721, in the records of Natchitoches Parish;

(b) Sale of Minerals from Grant Timber & Mfg. Company of La., Inc. to Good Pine Oil Company, Inc., dated November 16, 1932, recorded in Conveyance Book WW, Folio 552, Entry No. 25943, in the records of Grant Parish;

(c) Sale of Minerals from Grant Timber & Mfg. Company of La., Inc. to Good Pine Oil Company, Inc., dated November 16, 1932, recorded in Conveyance Book 42, Folio 255, Entry No. 25548, in the records of Winn Parish; and

(d) Sale of Minerals from Bodcaw Lumber Company of Louisiana, Inc. to Good Pine Oil Company, Inc. dated November 16, 1932, recorded in Conveyance Book 42, Folio 259, Entry No. 25552, in the records of Winn Parish;

(e) Sale of Minerals from Bodcaw Lumber Company of La., Inc. to Good Pine Oil Company, Inc., dated May 3, 1934, recorded in Conveyance Book 171, Folio 72, Entry No. 65277, in the records of Natchitoches Parish;

(f) Sale of Minerals from Bodcaw Lumber Company of La., Inc. to Good Pine Oil Company, Inc., dated May 3, 1934, recorded in Conveyance Book 44, Folio 26, Entry No. 26708, in the records of Winn Parish.

**Exhibit 2**

(a) Sale of lands by Bodcaw Lumber Company of Louisiana, Inc. to the United States of America dated February 11, 1936, recorded in Conveyance Book 173, Folio 400, Entry No. 66862, in the records of Natchitoches Parish; sale made subject to prior sales of minerals; and

(b) Sale of lands by Grant Timber & Manufacturing Company of Louisiana, Inc. to the United States of America, dated November 28, 1934, recorded in Conveyance Book ZZ, Folio 359, Entry No. 27363, in the records of Grant Parish; sale made subject to prior sales of minerals; and

(c) Sale of lands by Grant Timber and Manufacturing Company of Louisiana, Inc. to the United States of America, dated March 26, 1935, recorded in Conveyance Book 53, Folio 78, Entry No. 27600, in the records of Grant Parish; sale made subject to prior sales of minerals; and

(d) Sale of lands by Grant Timber & Manufacturing Company of Louisiana, Inc. to the United States of America, dated November 28, 1934, recorded in Conveyance Book 44, Folio 131, Entry No. 26836, in the records of Winn Parish; sale made subject to prior sales of minerals; and

(e) Sale of lands by Bodcaw Lumber Company of Louisiana, Inc. to the United States of America, dated December 20, 1934, recorded in Conveyance Book 44, Folio 160, Entry No. 26887, in the records of Winn Parish; sale made subject to prior sales of minerals; and

(f) Sale of lands by Grant Timber & Manufacturing Company of Louisiana, Inc. to the United States of America, dated March 26, 1935, recorded in Conveyance Book 44, Folio 413, Entry No. 27139, in the records of Winn Parish; sale made subject to prior sales of minerals; and

(g) Sale of lands by Bodcaw Lumber Company of Louisiana, Inc. to the United States

of America, dated June 12, 1935, recorded in Conveyance Book 44, Folio 546, Entry No. 27280, in the records of Winn Parish; sale made subject to prior sales of minerals; and

(h) Sale of lands by Grant Timber & Manufacturing Company of Louisiana, Inc. to the United States of America, dated March 26, 1935, recorded in Conveyance Book 44, Folio 419, Entry No. 27140, in the records of Winn Parish, Louisiana; sale made subject to prior sales of minerals; and

(i) Judgment in favor of the United States of America against Bodcaw Lumber Company of Louisiana, Inc., dated January 28, 1937, recorded in Conveyance Book 48, Folio 22, Entry No. 29731, in the records of Winn Parish; judgment subject to prior sales of minerals; and

(j) Judgment in favor of the United States of America against Bodcaw Lumber Company of Louisiana, Inc., dated January 28, 1937, recorded in Conveyance Book 177, Folio 612, Entry No. 69177, in the records of Natchitoches Parish; judgment subject to prior sales of minerals.

**Exhibit 3**

(a) Conveyance of Minerals from Good Pine Oil Company, Inc. to William C. Brown, et al., dated December 29, 1941, recorded in Conveyance Book 69, Folio 519, Entry No. 35127, in the records of Grant Parish;

(b) Conveyance of Minerals from Good Pine Oil Company, Inc. to William C. Brown, et al., dated December 29, 1941, recorded in Conveyance Book 54, Folio 324, Entry No. 34486, in the records of Winn Parish;

(c) Conveyance of Minerals from Good Pine Oil Company, Inc. to William C. Brown, et al., dated December 29, 1941, recorded in Conveyance Book 188, Folio 547, Entry No. 76585, in the records of Natchitoches Parish;

(d) Conveyance of Minerals from William C. Brown, et al., to Nebo Oil Company Inc., dated January 20, 1942, recorded in Conveyance Book 71, Folio 181, Entry No. 35377, in the records of Grant Parish;

(e) Conveyance of Minerals from William C. Brown, et al., to Nebo Oil Company, Inc. dated January 20, 1942, recorded in Conveyance Book 71, Folio 195, Entry No. 35378, in the records of Grant Parish;

(f) Conveyance of Minerals from William C. Brown, et al., to Nebo Oil Company, Inc., dated January 20, 1942, recorded in Conveyance Book 56, Folio 1, Entry No. 34722, in the records of Winn Parish;

(g) Conveyance of Minerals from William C. Brown, et al., to Nebo Oil Company, Inc. dated January 20, 1942, recorded in Conveyance Book 56, Folio 18, Entry No. 34723, in the records of Winn Parish;

(h) Conveyance of Minerals from William C. Brown, et al., to Nebo Oil Company,

Inc., dated January 20, 1942, recorded in Conveyance Book 189, Folio 370, Entry No. 76995, in the records of Natchitoches Parish;

(i) Conveyance of Minerals from William C. Brown, et al., to Nebo Oil Company, Inc., dated January 20, 1942, recorded in Conveyance Book 189, Folio 382, Entry No. 76996, in the records of Natchitoches Parish;

(j) Acknowledgment by Joe Smith, h/o Anita O'Neal Smith, to Nebo Oil Company, Inc., dated June 19, 1952, recorded in Conveyance Book 101, Folio 3, Entry No. 48538, in the records of Grant Parish; Conveyance Book 74, Folio 51, Entry No. 49817, in the records of Winn Parish; and Conveyance Book 217, Folio 80, Entry No. 97514, in the records of Natchitoches Parish (husband acknowledged in this document that property conveyance in (d), (e), (f), (g), (h) and (i) above was the separate property of his wife);

(k) Acknowledgment by H.I. Kenney, h/o Grace Wagner Kenney, to Nebo Oil Company, Inc., dated June 18, 1952, recorded in Conveyance Book 101, Folio 5, Entry No. 48539, in the records of Grant Parish; Conveyance Book 74, Folio 52, Entry No. 49818, in the records of Winn Parish; and Conveyance Book 217, Folio 82, Entry No. 97515, in the records of Natchitoches Parish (husband acknowledged in this document that property conveyed in (d), (e), (f), (g), (h) and (i) above was the separate property of his wife);

(l) Acknowledgment by S. J. Seeger, h/o Helen B. Seeger, to Nebo Oil Company, Inc., dated July 31, 1944, recorded in Conveyance Book 195, Folio 369, Entry No. 82455, in the records of Grant Parish (husband acknowledged in this document that property conveyed in (h) and (i) above was the property of his

wife);

(m) Acknowledgment by Mary Seeger O'Boyle, et al., being the heirs of S. J. Seeger, deceased h/o Helen B. Seeger, to Nebo Oil Company, Inc., dated November 13, 1954, recorded in Conveyance Book 104, Folio 433, Entry No. 50887, in the records of Grant Parish; and Conveyance Book 235, Folio 717, Entry No. 175422, in the records of Winn Parish (heirs of deceased husband acknowledged in this document that property conveyed in (d), (e), (f) and (g) above was the separate property of his wife);

(n) Certificate of Amendment of Certification of Incorporation (name change) from Nebo Oil Company, Inc. to Bodcaw Company, dated April 4, 1960, recorded in Conveyance Book 119, Folio 39, Entry No. 56054, in the records of Grant Parish; Conveyance Book 87, Folio 221, Entry 56325, in the records of Winn Parish; and Conveyance Book 238, Folio 401, Entry No. 111325, in the records of Natchitoches Parish;

(o) Certificate of Agreement of Merger (Bodcaw Company merged into IPB, Inc., and IPB, Inc. changed its name to Bodcaw Company), dated October 10, 1979, recorded in Conveyance Book 226, Folio 84, Entry 84739, in the records of Grant Parish; Conveyance Book 143, Folio 608, Entry No. 110749, in the records of Winn Parish; and Conveyance Book 356, Folio 491, Entry No. 157257, in the records of Natchitoches Parish; all as further evidenced by (y) below;

(p) Certificate of Ownership and Merger filed by Bodcaw Company, dated October 10, 1979, recorded in Conveyance Book 226, Folio 85, Entry No. 84740, in the records of Grant Parish; Conveyance Book 143, Folio 609, Entry No. 110750, in

the records of Winn Parish; and Conveyance Book 356, Folio 492, Entry No. 157258, in the records of Natchitoches Parish;

(q) Mineral Deed from Bodcaw Company to Placid Oil Company, dated October 11, 1979, recorded in Conveyance Book 224, Folio 812, Entry No. 84742, in the records of Grant Parish; Conveyance Book 143, Folio 620, Entry No. 110752, in the records of Winn Parish; and Conveyance Book 356, Folio 508, Entry No. 157260, in the records of Natchitoches Parish;

(r) Assignment, Conveyance and Bill of Sale from Placid Oil Company to Placid International Oil Limited, and in turn from Placid International Oil Limited to Louisiana-Hunt Petroleum Corporation and Rosewood Resources (POC), Inc., dated June 13, 1983, recorded in Conveyance Book 259, Folio 139, Entry No. 93374, in the records of Grant Parish; Conveyance Book 158, Folio 550, Entry No. 122732, in the records of Winn Parish; and Conveyance Book 388, Folio 19, Entry No. 167876, in the records of Natchitoches Parish;

(s) Certificate of Ownership, Merger Name Change from Rosewood Resources (POC), Inc. to Rosewood Resources, Inc., dated December 31, 1984, recorded in Mortgage Book 134, Folio 880, Entry No. 44105, in the records of Grant Parish; Conveyance Book 172, Folio 553, Entry No. 134394, in the records of Winn Parish; and Conveyance Book 420, Folio 49, Entry No. 176881, in the records of Natchitoches Parish;

(t) Certificate of Merger and Name Change from Louisiana-Hunt Petroleum Corporation to Hunt Petroleum Corporation, dated January 31, 1986, recorded in Conveyance Book 215, Folio 574, Entry 64469, in the records of Grant Parish;

Conveyance Book 182, Folio 542, Entry 141085, in the records of Winn Parish; and Conveyance Book 442, Folio 127, Entry No. 182279, in the records of Natchitoches Parish;

(u) Assignment and Conveyance from Rosewood Resources, Inc. to Kingfisher Resources, Inc., dated April 24, 1996, recorded in Conveyance Book 338, Folio 395, Entry No. 117748, in the records of Grant Parish; Conveyance Book 217, Folio 757, Entry No. 163185, in the records of Winn Parish; and Oil and Gas Book 296, Folio 836, Entry No. 230814, in the records of Natchitoches Parish; and

(v) Conveyance and Assumption Agreement from OXY USA, Inc. and Placid Oil Company to Petro-Hunt, L.L.C., executed April 6, 1998, recorded in Conveyance Book 348, Folio 191, Entry No. 121619, in the records of Grant Parish; Conveyance Book 227, Folio 85, Entry No. 169509, in the records of Winn Parish; and Conveyance Book 529, Folio 653, Entry No. 209089, in the records of Natchitoches Parish.

**EXHIBIT 4**

**EXHIBIT A**

**PLAINTIFFS' MINERAL PROPERTIES**

**GRANT PARISH, LOUISIANA**

**TOWNSHIP 8 NORTH, RANGE 1 WEST**

SECTION 2: ENTIRE SECTION.
SECTION 4: E/2; E/2 W/2; NW/4 NW/4; W/2 SW/4.
SECTION 6: NE/4; SE/4 NW/4; N/2 SW/4; N/2 SE/4; SW/4 SE/4; SW/4 SW/4 LESS 2 ACRES IN THE SOUTHEAST CORNER DESCRIBED AS FOLLOWS: BEGINNING AT THE SOUTHEAST CORNER OF SAID FORTY ACRES, RUN THENCE NORTH 20 RODS, THENCE WEST 16 RODS, THENCE SOUTH 20 RODS, THENCE EAST 16 RODS TO THE POINT OF BEGINNING.
SECTION 8: ENTIRE SECTION.
SECTION 10: ENTIRE SECTION.
SECTION 12: ENTIRE SECTION.
SECTION 13: N/2 S/2; SE/4 SW/4.
SECTION 14: N/2; SW/4; SE/4 SE/4.
SECTION 16: ENTIRE SECTION.
SECTION 18: NE/4; E/2 NW/4; NW/4 SW/4; NE/4 SE/4; S/2 SE/4.
SECTION 19: NW/4 SW/4; NW/4 SE/4; S/2 SE/4.
SECTION 20: E/2; NE/4 SW/4; S/2 SW/4.
SECTION 21: NW/4 NW/4; S/2.
SECTION 22: ENTIRE SECTION.
SECTION 24: ENTIRE SECTION.
SECTION 26: N/2 N/2; SE/4 NE/4; SW/4 NW/4; NW/4 SW/4; S/2 S/2.
SECTION 27: N/2 N/2; SE/4 NE/4; NE/4 SW/4; N/2 SE/4.

**TOWNSHIP 8 NORTH, RANGE 2 WEST**

SECTION 1: ENTIRE SECTION.
SECTION 2: ENTIRE SECTION.
SECTION 3: ENTIRE SECTION.
SECTION 4: E/2 E/2; SW/4 NE/4; W/2 W/2; SE/4 SW/4.
SECTION 5: E/2; E/2 W/2; SW/4 NW/4; W/2 SW/4.
SECTION 6: NW/4 NE/4; S/2 NE/4; E/2 NW/4; NE/4 SW/4; N/2 SE/4; SE/4 SE/4.
SECTION 7: ENTIRE SECTION.

**TOWNSHIP 8 NORTH, RANGE 2 WEST (CONTINUED)**

SECTION 8: N/2; SW/4; S/2 SE/4; NW/4 SE/4.
SECTION 9: N/2; SE/4; NE/4 SW/4; SW/4 SW/4.
SECTION 10: NE/4; NE/4 NW/4; N/2 NW/4 NW/4; E/2 SE/4 NW/4; E/2 W/2 SE/4 NW/4; S/2 NE/4 SE/4; SE/4 SE/4.
SECTION 11: NE/4; N/2 SW/4; SW/4 SW/4; E/2 SE/4.
SECTION 12: N/2 NE/4; NW/4; W/2 SE/4; SE/4 SE/4; SW/4.
SECTION 13: NE/4; E/2 NW/4; SW/4 NW/4; SW/4; N/2 SE/4; SW/4 SE/4; ALL THAT PART OF SE/4 SE/4 LYING NORTH OF FISH CREEK.
SECTION 14: E/2 NE/4; W/2 NW/4; E/2 SW/4; SW/4 SW/4; SE/4; NW/4 SW/4 LESS 10 ACRES DESCRIBED AS FOLLOWS: BEGINNING AT THE NORTHEAST CORNER OF SAID FORTY ACRES, RUN THENCE SOUTH 50 RODS, THENCE WEST 32 RODS, THENCE NORTH 50 RODS, THENCE EAST 32 RODS TO THE POINT OF BEGINNING.
SECTION 16: N/2; SW/4; NE/4 SE/4.
SECTION 17: N/2; SW/4; W/2 SE/4; SE/4 SE/4.
SECTION 18: S/2 NW/4; SW/4; N/2 SE/4; NE/4 LESS 1 ACRE SOLD TO WHITE CHAPEL CHURCH NEAR THE NORTHWEST CORNER OF SAID NE/4 AND BEING IMMEDIATELY EAST OF A SIMILAR ACRE DONATED TO THE SAME CHURCH BY JOHN W. WHITE IN CONVEYANCE BOOK "M", PAGE 10, IN THE RECORDS OF GRANT PARISH, LOUISIANA.
SECTION 19: ENTIRE SECTION.
SECTION 20: N/2; NE/4 SW/4; SE/4.
SECTION 29: W/2 NE/4; NW/4; N/2 SW/4.
SECTION 30: NE/4; N/2 SW/4; SE/4 SW/4; SE/4.

**TOWNSHIP 8 NORTH, RANGE 3 WEST**

SECTION 1: SW/4 NE/4; W/2; SE/4.
SECTION 2: ENTIRE SECTION.
SECTION 11: N/2; N/2 SW/4; SE/4 SW/4; SE/4.
SECTION 12: N/2; N/2 SE/4.
SECTION 13: SE/4 SE/4.
SECTION 14: NW/4 NE/4.
SECTION 24: S/2 NE/4; S/2 SW/4; SE/4.
SECTION 25: NE/4; S/2 NW/4; SW/4; N/2 SE/4; SW/4 SE/4; W/2 SE/4 SE/4.

**TOWNSHIP 9 NORTH, RANGE 1 WEST**

SECTION 3: ENTIRE SECTION.
SECTION 4: SE/4 NE/4; E/2 NW/4; S/2 NW/4 NW/4; SW/4 NW/4; NE/4 SW/4; S/2 SW/4; SE/4.

SECTION 5: N/2 NE/4; W/2 NW/4 NW/4; S/2 NW/4; SW/4; S/2 SE/4.
SECTION 6: N/2; SE/4; N/2 SW/4; SE/4 SW/4; N/2 SW/4 SW/4; SE/4 SW/4 SW/4.
SECTION 7: ENTIRE SECTION.
SECTION 8: W/2 W/2 NW/4; NW/4 SW/4.
SECTION 9: ENTIRE SECTION LESS 1 ACRE DESCRIBED AS FOLLOWS: BEGINNING AT THE NORTHEAST CORNER OF THE NW/4 NW/4, THENCE WEST ALONG THE NORTH LINE OF SECTION 9 A DISTANCE OF 196.2 FEET, THENCE SOUTH 204 FEET TO NORTH BOUNDARY LINE OF L&A RAILWAY RIGHT OF WAY, THENCE SOUTHEASTERLY ALONG SAID RIGHT OF WAY TO THE EAST LINE OF THE NW/4 NW/4 OF SECTION 9, THENCE NORTH ALONG SAID EAST LINE 240 FEET TO THE POINT OF BEGINNING.
SECTION 10: NW/4; N/2 SW/4; W/2 SW/4 SW/4; SE/4.
SECTION 11: ENTIRE SECTION.
SECTION 14: NE/4; N/2 NW/4; E/2 SE/4 NW/4; SE/4 SW/4; N/2 SE/4 LESS 2 ACRES IN SOUTHWEST CORNER OF NE/4 SE/4 RETAINED BY WILLIAM BRADFORD IN CONVEYANCE BOOK "K", PAGE 438, IN THE RECORDS OF GRANT PARISH, LOUISIANA; W/2 SW/4 SE/4.
SECTION 15: N/2; N/2 S/2.
SECTION 16: ENTIRE SECTION.
SECTION 17: E/2 NE/4; NW/4 NW/4; W/2 SW/4; SE/4 SW/4; NE/4 SE/4; S/2 S/2 NE/4 W/4; S/2 SE/4.
SECTION 18: NE/4 NW/4; S 5/8 NW/4 SW/4; S/2 S/2.
SECTION 19: ENTIRE SECTION.
SECTION 20: ENTIRE SECTION.
SECTION 21: ENTIRE SECTION.
SECTION 22: S/2 S/2 NW/4 NE/4; NW/4 NE/4 NW/4; S/2 NE/4 NW/4; NW/4 NW/4; S/2 NW/4; SW/4 NE/4; S/2.
SECTION 23: N/2 NE/4; NE/4 NW/4; S/2 N/2; S/2.
SECTION 24: SW/4 SW/4.
SECTION 25: NE/4 NE/4; NW/4 NW/4; S/2 N/2; S/2.
SECTION 26: ENTIRE SECTION.
SECTION 27: ENTIRE SECTION.
SECTION 28: N/2; N/2 S/2; SE/4 SW/4; S/2 SE/4.
SECTION 29: ENTIRE SECTION.
SECTION 30: NE/4; N/2 NW/4; SW/4 NW/4; NW/4 SE/4; SE/4 SE/4.
SECTION 31: ENTIRE SECTION.
SECTION 32: S/2 NE/4; E/2 NW/4; S/2.
SECTION 33: N/2 NE/4; SW/4 NE/4; NE/4 NW/4; S/2 NW/4; SW/4; NE/4 SE/4.
SECTION 34: NE/4 NE/4; N/2 NW/4 NE/4; SE/4 NW/4 NE/4; NE/4 NW/4; N/2 SE/4; SE/4 SE/4.
SECTION 35: N/2 N/2; SE/4 NE/4; SW/4; S/2 SE/4.
SECTION 36: E/2; N/2 NW/4; E/2 SW/4.

**TOWNSHIP 9 NORTH, RANGE 2 WEST**

SECTION 1: ENTIRE SECTION.
SECTION 2: NE/4 NE/4; S/2 S/2.
SECTION 3: N/2; NE/4 SW/4; SE/4.
SECTION 4: N/2 NW/4; SE/4 NW/4; NE/4 SE/4; S/2 SE/4.
SECTION 5: N/2 NW/4; SW/4 NW/4; SW/4.
SECTION 6: E/2; NE/4 SW/4.
SECTION 7: FRACTIONAL S/2 S/2.
SECTION 8: E/2 E/2; SW/4 SE/4; S/2 SW/4.
SECTION 37: FRACTIONAL SECTION, OTHERWISE DESCRIBED AS N/2 S/2 OF SECTION 7, AND N/2 SW/4, NW/4, W/2 NE/4 AND NW/4 SE/4 OF SECTION 8.
SECTION 9: NW/4 NE/4; S/2 NE/4; W/2; SE/4.
SECTION 10: S/2 NW/4; S/2.
SECTION 11: N/2 NE/4; NE/4 NW/4; N/2 SE/4 NW/4; W/2 SW/4; SE/4 SW/4; W/2 SE/4; SE/4 SE/4.
SECTION 12: NE/4; E/2 NW/4; N/2 SE/4; SE/4 SE/4.
SECTION 13: NE/4 NE/4; NW/4; S/2.
SECTION 14: ENTIRE SECTION.
SECTION 15: ENTIRE SECTION.
SECTION 16: ENTIRE SECTION.
SECTION 17: ENTIRE SECTION.
SECTION 18: N/2; N/2 SW/4; SE/4.
SECTION 19: W/2; W/2 SE/4; SE/4 SE/4.
SECTION 20: NE/4; N/2 NW/4; SE/4 NW/4; S/2.
SECTION 21: ENTIRE SECTION.
SECTION 22: ENTIRE SECTION.
SECTION 23: ENTIRE SECTION.
SECTION 24: ENTIRE SECTION.
SECTION 25: ENTIRE SECTION.
SECTION 26: ENTIRE SECTION.
SECTION 27: ENTIRE SECTION.
SECTION 28: N/2; SW/4; N/2 SE/4; SW/4 SE/4.
SECTION 29: ENTIRE SECTION.
SECTION 30: SW/4 NW/4; N/2 SE/4; SE/4 SE/4.
SECTION 31: E/2 NE/4; NW/4 NW/4; S/2 NW/4; N/2 SW/4; SE/4 SW/4; SE/4.
SECTION 32: N/2; N/2 S/2; SW/4 SE/4.
SECTION 33: N/2; NW/4 SW/4; SE/4 SE/4.
SECTION 34: N/2; E/2 SW/4; SE/4.
SECTION 35: ENTIRE SECTION.
SECTION 36: NW/4 NE/4; S/2 NE/4; W/2; SE/4.

CONTAINING 56,562.86 ACRES, MORE OR LESS, IN GRANT PARISH.

## NATCHITOCHES PARISH, LOUISIANA

### TOWNSHIP 11 NORTH, RANGE 5 WEST

SECTION 4: ALL OF E/2 AND E/2 W/2 WEST OF SALINE BAYOU.

### TOWNSHIP 12 NORTH, RANGE 5 WEST

SECTION 5: ALL OF W/2 E/2 AND W/2 LYING WEST OF SALINE BAYOU.
SECTION 6: NE/4 NW/4; W/2 NW/4; SW/4; E/2.
SECTION 8: ALL THAT PART OF E/2 LYING WEST OF SALINE BAYOU.
SECTION 9: ALL THAT PART OF W/2 SW/4 LYING WEST OF SALINE BAYOU.
SECTION 16: ENTIRE SECTION LYING WEST OF SALINE BAYOU.
SECTION 17: E/2 SE/4.
SECTION 18: SW/4 SE/4; SE/4 SW/4.
SECTION 19: SE/4 NE/4; W/2 NE/4; N/2 SE/4; E/2 W/2.
SECTION 28: ALL THAT PART OF S/2 SW/4 LYING WEST OF SALINE BAYOU.
SECTION 29: SW/4 NE/4; W/2 SE/4.
SECTION 30: SW/4 SE/4; NW/4; SE/4 SW/4; NW/4 SW/4.
SECTION 31: NW/4 NE/4.
SECTION 32: NE/4.
SECTION 33: ENTIRE SECTION LYING WEST OF SALINE BAYOU.

### TOWNSHIP 12 NORTH, RANGE 6 WEST

SECTION 1: SW/4 NE/4; SE/4 NW/4; S/2.
SECTION 2: N/2 N/2; SE/4; S/2 SW/4.
SECTION 3: S/2 NW/4 SE/4; SW/4 SE/4; SE/4 SW/4.
SECTION 4: 23 ACRES ON SOUTH SIDE OF NE/4 SE/4; S/2 SE/4; N/2 NW/4; E/2 SW/4; SW/4 SW/4.
SECTION 8: E/2 NE/4; NW/4 NE/4.
SECTION 9: E/2; NW/4; E/2 SW/4; NW/4 SW/4.
SECTION 10: E/2; NW/4; E/2 SW/4; SW/4 SW/4.
SECTION 11: ENTIRE SECTION.
SECTION 12: NW/4 NE/4; NW/4 SE/4; W/2.
SECTION 13: SE/4 NW/4; W/2 NW/4; S/2.
SECTION 14: E/2; NW/4; N/2 SW/4; SE/4 SW/4; N/2 SW/4 SW/4.
SECTION 15: ENTIRE SECTION.
SECTION 16: NE/4 NE/4.
SECTION 22: SE/4 NE/4; W/2 NE/4; S/2.
SECTION 24: NW/4 NE/4; N/2 NW/4.

**TOWNSHIP 13 NORTH, RANGE 5 WEST**

SECTION 7: ALL OF S/2 SW/4 LYING WEST OF SALINE BAYOU.
SECTION 18: THAT PART OF SE/4, E/2 NW/4 AND NW/4 NW/4 LYING WEST OF SALINE BAYOU.
SECTION 19: THAT PART OF NW/4 NW/4, SW/4, W/2 E/2, SE/4 SE/4 AND E/2 NE/4 LYING WEST OF SALINE BAYOU.
SECTION 30: W/2 NE/4; SE/4; W/2.
SECTION 31: ENTIRE SECTION.
SECTION 32: THAT PART OF W/2 LYING WEST OF SALINE BAYOU.

**TOWNSHIP 13 NORTH, RANGE 6 WEST**

SECTION 1: W/2.
SECTION 2: E/2 E/2; W/2 NE/4; SW/4 SE/4; E/2 W/2; NW/4 NW/4.
SECTION 4: SW/4.
SECTION 5: S/2 NE/4 NE/4; SE/4 NE/4; W/2 NE/4 SE/4; S/2 SE/4.
SECTION 6: 16 ACRES IN A SQUARE IN THE NORTHWEST CORNER OF THE NW/4 NE/4; 2 ACRES IN A SQUARE IN THE SOUTHEAST CORNER OF THE SW/4 NE/4; SW/4 SE/4; S/2 NW/4 SE/4; NE/4 NW/4 SE/4; W/2.
SECTION 7: NE/4 SE/4; NE/4; W/2.
SECTION 8: E/2 NE/4; SW/4 SE/4; NW/4; E/2 SW/4; NW/4 SW/4.
SECTION 9: NW/4 NW/4.
SECTION 10: SE/4; NE/4 SW/4; W/2 SW/4; 27 ACRES IN THE NW/4 MORE PARTICULARLY DESCRIBED AS FOLLOWS: BEGINNING AT THE SOUTHWEST CORNER OF THE NW/4, THENCE EAST 166 YARDS FOR A POINT OF BEGINNING, THENCE EAST 350 YARDS, THENCE NORTH 372 YARDS, THENCE WEST 350 YARDS, THENCE SOUTH 372 YARDS TO THE POINT OF BEGINNING.
SECTION 11: E/2 NE/4; NW/4 NE/4; N/2 SW/4 NE/4; SE/4 SE/4; NE/4 NW/4; N/2 SE/4 NW/4; SW/4 NW/4.
SECTION 12: NE/4 SE/4; W/2 E/2; NW/4; NE/4 SW/4; SW/4 SW/4.
SECTION 13: E/2; SE/4 SW/4; W/2 SW/4.
SECTION 14: NE/4 SE/4; S/2 S/2.
SECTION 15: N/2 NW/4 NW/4.
SECTION 17: NW/4 NW/4 LESS 1 ACRE IN A SQUARE IN THE SOUTHEAST CORNER.
SECTION 18: NE/4 LESS THE SOUTH 30 ACRES; N/2 NW/4; NW/4 SW/4; NE/4 SW/4 LESS 4 ACRES IN A SQUARE IN THE SOUTHEAST CORNER; SE/4 NW/4 LESS 2 ACRES IN A SQUARE IN THE NORTHWEST CORNER, AND LESS 3 ACRES DESCRIBED AS BEGINNING AT A POINT 295 FEET SOUTH OF THE NORTHWEST CORNER OF SAID FORTY ACRES, RUN THENCE EAST 210 YARDS, THENCE SOUTH 70 YARDS, THENCE WEST 210 YARDS, THENCE

NORTH 70 YARDS TO THE POINT OF BEGINNING.
SECTION 19: NE/4; SE/4 SE/4; W/2 SE/4; E/2 W/2; W/2 SW/4; SW/4 NW/4.
SECTION 20: E/2 SW/4; N/2 NE/4 LESS RIGHT OF WAY OF L & NW RAILROAD.
SECTION 23: NW/4 NE/4; E/2 SE/4; SW/4 SE/4.
SECTION 24: ENTIRE SECTION.
SECTION 25: ENTIRE SECTION.
SECTION 26: E/2; SE/4 NW/4; SW/4.
SECTION 27: SE/4 NE/4; S/2.
SECTION 28: N/2 NE/4; NW/4 SE/4; S/2 NW/4; SW/4.
SECTION 32: N/2; NW/4 SW/4; N/2 SE/4.
SECTION 33: N/2 NE/4; W/2.
SECTION 34: E/2; NW/4; N/2 SW/4.
SECTION 35: ENTIRE SECTION.
SECTION 36: W/2 NE/4; SE/4 NE/4; SE/4; W/2.

**TOWNSHIP 13 NORTH, RANGE 7 WEST**

SECTION 1: E/2 E/2; NW/4 SE/4; N/2 NW/4; NE/4 SW/4; W/2 SE/4 SW/4; W/2 SW/4.
SECTION 2: E/2 NE/4; NW/4 NE/4; 14 ACRES IN A SQUARE IN THE SOUTHEAST CORNER OF NE/4 SE/4; S/2 SE/4; W/2.
SECTION 10: SE/4 NE/4; E/2 SE/4; E/2 SW/4 SE/4; E/2 SW/4 NE/4; NW/4 SW/4 NE/4.
SECTION 11: ENTIRE SECTION.
SECTION 12: E/2 NE/4; SW/4 NE/4; W/2 SE/4; SE/4 NW/4; W/2 NW/4; SW/4.
SECTION 13: W/2 SW/4; SW/4 NW/4; E/2 NE/4; NE/4 SE/4; SW/4 SE/4.
SECTION 14: NE/4 SE/4; SE/4 NE/4; W/2 E/2; E/2 W/2; W/2 NW/4; NW/4 SW/4.
SECTION 15: E/2 NE/4; NE/4 SE/4.
SECTION 23: N/2 NE/4; E/2 NW/4.
SECTION 24: SE/4; S/2 NE/4.

CONTAINING 25,024.17 ACRES, MORE OR LESS, IN NATCHITOCHES PARISH.

**WINN PARISH, LOUISIANA**

**TOWNSHIP 9 NORTH, RANGE 3 WEST**

SECTION 1: W/2 NE/4; NW/4; S/2.
SECTION 2: NW/4 NW/4; S/2 NW/4; S/2 SE/4.
SECTION 3: E/2 NE/4; W/2 SE/4 SE/4.
SECTION 7: NW/4 NE/4.
SECTION 10: SE/4 SE/4.
SECTION 11: FRACTIONAL E/2 E/2; NW/4 NE/4; E/2 NW/4; SE/4 SW/4; SW/4 SE/4.
SECTION 12: ENTIRE SECTION.
SECTION 37: ENTIRE SECTION.

SECTION 13: ENTIRE SECTION.
SECTION 14: NE/4; N/2 SE/4; SE/4 SE/4.
SECTION 15: E/2 NE/4; NE/4 SE/4.
SECTION 21: NE/4 LESS 20 ACRES ON WEST SIDE.
SECTION 22: SE/4 NE/4; SW/4 NW/4; E/2 SE/4; SW/4 SE/4; NW/4 SE/4 LESS 11.80 ACRES NORTH AND WEST OF TRAVERSE LINE DESCRIBED AS FOLLOWS: BEGIN AT A POINT 283 FEET NORTH OF THE SOUTHWEST CORNER OF SAID 40 ACRE TRACT AND RUN THENCE NORTH 62.5 DEGREES EAST 485 FEET, THENCE NORTH 40 DEGREES EAST 292 FEET, THENCE NORTH 31.5 DEGREES EAST 312 FEET, THENCE NORTH 2 DEGREES EAST 206 FEET, THENCE NORTH 10 DEGREES WEST 144 FEET TO A POINT ON THE NORTH BOUNDARY LINE OF SAID FORTY 578 FEET WEST OF THE NORTHEAST CORNER OF SAID FORTY; SE/4 SW/4 LESS 5.2 ACRES NORTH AND WEST OF TRAVERSE LINE DESCRIBED AS FOLLOWS: BEGIN AT A POINT ON THE WEST SIDE OF SAID FORTY 675 FEET NORTH OF THE SOUTH SECTION LINE AND RUN THENCE NORTH 43.5 DEGREES EAST 625 FEET, THENCE NORTH 62 DEGREES EAST 445 FEET TO A POINT ON THE NORTH BOUNDARY LINE OF SAID FORTY 520 FEET WEST OF THE NORTHEAST CORNER OF SAID FORTY; SW/4 SW/4 LESS 10.10 ACRES NORTH AND EAST OF A TRAVERSE LINE DESCRIBED AS FOLLOWS: BEGIN AT A POINT 609 FEET EAST OF THE NORTHWEST CORNER OF THE SAID FORTY AND RUN THENCE SOUTH 33.5 DEGREES EAST 329 FEET, THENCE SOUTH 55 DEGREES WEST 180 FEET, THENCE SOUTH 34.5 DEGREES EAST 390 FEET, THENCE SOUTH 71 DEGREES EAST 350 FEET, THENCE NORTH 60 DEGREES EAST 100 FEET, THENCE NORTH 38 DEGREES EAST 135 FEET TO A POINT ON THE EAST SIDE 675 FEET NORTH OF THE SOUTH LINE OF THE SECTION.
SECTION 23: SE/4 NE/4; N/2 SE/4; SE/4 SE/4; E/2 NW/4; SW/4 NW/4; N/2 SW/4; SW/4 SW/4.
SECTION 24: E/2; E/2 W/2; W/2 SW/4; SW/4 NW/4; NW/4 NW/4 LESS A TRACT CONTAINING 2.53 ACRES MORE PARTICULARLY DESCRIBED AS FOLLOWS: BEGIN AT THE NORTHWEST CORNER OF THE SECTION AND RUN EAST ALONG THE NORTH BOUNDARY LINE 113 YARDS AND THENCE SOUTH 85 YARDS TO THE NORTHWEST CORNER OF THE TRACT FOR A POINT OF BEGINNING, RUN THENCE SOUTH 175 YARDS, THENCE EAST 70 YARDS, THENCE NORTH 175 YARDS, THENCE WEST 70 YARDS TO THE POINT OF BEGINNING, THE TRACT EXCEPTED HAVING BEEN SOLD IN DEEDS OF CONVEYANCE RECORDED IN BOOK "Q", PAGE 480, AND BOOK "U", PAGE 305 OF THE CONVEYANCE RECORDS OF WINN PARISH, LOUISIANA.
SECTION 25: ENTIRE SECTION.
SECTION 26: E/2 NE/4; W/2 NW/4; S/2; NE/4 NW/4 LESS 1 ACRE RESERVED FOR A GRAVEYARD AND MORE PARTICULARLY DESCRIBED AS FOLLOWS: BEGIN AT THE NORTHWEST CORNER OF THE SE/4 NW/4 AND RUN DUE NORTH 200 FEET FOR THE POINT OF BEGINNING, RUN THENCE DUE

EAST 210 FEET, THENCE DUE NORTH 210 FEET, THENCE DUE WEST 210 FEET, THENCE DUE SOUTH 210 FEET TO THE POINT OF BEGINNING.
SECTION 27: ENTIRE SECTION.
SECTION 34: ENTIRE SECTION.
SECTION 35: W/2 NE/4; SE/4; W/2.
SECTION 36: NE/4; NE/4 NW/4; W/2 SW/4.

**TOWNSHIP 9 NORTH, RANGE 5 WEST**

SECTION 3: ENTIRE SECTION.
SECTION 4: E/2 NE/4; W/2 NW/4; SW/4.
SECTION 5: E/2; E/2 SW/4.
SECTION 7: NE/4.
SECTION 8: E/2.
SECTION 9: ENTIRE SECTION.
SECTION 11: NE/4; SW/4 SE/4; W/2.
SECTION 13: S/2 SE/4; NW/4 SW/4; SE/4 SW/4.
SECTION 16: NE/4 SW/4; W/2 SW/4.
SECTION 20: W/2 SE/4; E/2 SW/4.
SECTION 21: W/2 W/2 NE/4 NW/4; W/2 NW/4; SW/4.
SECTION 22: SE/4 SW/4; S/2 NE/4 SW/4.
SECTION 27: N/2 N/2; SE/4 NE/4; SE/4 NW/4.
SECTION 28: N/2 NW/4 NW/4.
SECTION 30: E/2 SE/4; NW/4 SE/4.

**TOWNSHIP 9 NORTH, RANGE 6 WEST**

SECTION 25: NE/4.

**TOWNSHIP 10 NORTH, RANGE 1 WEST**

SECTION 19: NW/4 SW/4; S/2 S/2; NE/4 SE/4.
SECTION 20: E/2 NE/4; E/2 NW/4; NE/4 SE/4.
SECTION 21: N/2.
SECTION 28: N/2 NW/4; SE/4 NW/4; S/2 NW/4 SW/4; S/2 SW/4.
SECTION 29: E/2; N/2 NW/4; SW/4.
SECTION 30: SW/4; NW/4 SE/4.
SECTION 31: NE/4 NE/4; S/2 NE/4; NW/4 NW/4; S/2 NW/4; S/2.
SECTION 33: N/2; NW/4 SW/4; N/2 SW/4 SW/4; SE/4 SW/4; NW/4 SE/4; W 3/4 SE/4 SE/4.

**TOWNSHIP 10 NORTH, RANGE 2 WEST**

SECTION 7: SE/4 NE/4; NE/4 SW/4; S/2 SW/4; SE/4 LESS 8.21 ACRES OF THE ARKANSAS SOUTHERN EXTENSION RAILWAY COMPANY RIGHT OF

WAY.

SECTION 8: E/2 NE/4; E/2 NE/4 SE/4; W/2 NW/4 SE/4 LESS .71 ACRES OF THE LOUISIANA & ARKANSAS RAILWAY COMPANY RIGHT OF WAY.

SECTION 9: NW/4 NE/4; S/2 NE/4; NW/4; N/2 SW/4; SE/4 SW/4; W/2 SE/4.

SECTION 10: W/2 SW/4; NE/4 SE/4.

SECTION 11: NW/4 SW/4; S/2 SW/4.

SECTION 13: SW/4 SE/4.

SECTION 14: NW/4 NW/4; NE/4 SW/4; SW/4 SE/4.

SECTION 15: NW/4.

SECTION 16: NE/4; E/2 NW/4; SE/4 SW/4.

SECTION 17: W/2 NE/4; W/2; SE/4 LESS 2.97 ACRES OF THE LOUISIANA & ARKANSAS RAILWAY COMPANY RIGHT OF WAY AND LESS 7.50 ACRES OF THE ARKANSAS SOUTHERN EXTENSION RAILWAY COMPANY RIGHT OF WAY.

SECTION 19: NE/4; E/2 NW/4; SW/4; NW/4 SE/4; S/2 SE/4.

SECTION 20: NE/4 SW/4.

SECTION 21: NE/4; SE/4 NW/4; S/2 LESS 6.12 ACRES OF THE LOUISIANA & ARKANSAS RAILWAY COMPANY RIGHT OF WAY.

SECTION 23: NW/4 NE/4; S/2 NE/4; W/2; SE/4.

SECTION 24: NW/4 NE/4; S/2 NE/4.

SECTION 25: ENTIRE SECTION.

SECTION 26: NE/4 NE/4; W/2 E/2; W/2; E/2 SE/4.

SECTION 27: ENTIRE SECTION.

SECTION 28: NE/4.

SECTION 29: SW/4 NE/4; W/2; NW/4 SE/4; S/2 SE/4 LESS 10.07 ACRES OF THE ROCK ISLAND ARKANSAS AND LOUISIANA RAILROAD COMPANY RIGHT OF WAY AND LESS 12.30 ACRES OF THE ARKANSAS SOUTHERN EXTENSION RAILWAY COMPANY RIGHT OF WAY.

SECTION 31: NE/4 NE/4; NW/4 NW/4; S/2 N/2; S/2.

SECTION 32: E/2 E/2; E/2 W/2; SW/4 NW/4 LESS 3.72 ACRES OF THE ROCK ISLAND ARKANSAS AND LOUISIANA RAILROAD COMPANY RIGHT OF WAY.

SECTION 33: NE/4; SW/4 NW/4; W/2 SW/4; NE/4 SE/4; E/2 SE/4 SE/4 LESS 3.31 ACRES OF THE ROCK ISLAND ARKANSAS AND LOUISIANA RAILWAY COMPANY RIGHT OF WAY.

SECTION 34: SW/4 SW/4.

SECTION 35: NE/4 NE/4; N/2 NW/4; S/2 N/2; S/2.

SECTION 36: NW/4 NE/4; N/2 NW/4; SW/4 NW/4; S/2; NE/4 NE/4 LESS 7 ACRES MORE PARTICULARLY DESCRIBED AS FOLLOWS: BEGIN AT A POINT ON THE SOUTH LINE OF THE SAID FORTY 220 YARDS WEST OF THE SOUTHEAST CORNER, RUN THENCE NORTH 154 YARDS, THENCE WEST 220 YARDS, THENCE SOUTH 154 YARDS, THENCE EAST 220 YARDS TO THE POINT OF BEGINNING.

**TOWNSHIP 10 NORTH, RANGE 3 WEST**

SECTION 9: NE/4 NE/4.
SECTION 10: NW/4 NW/4.
SECTION 25: ENTIRE SECTION.
SECTION 26: E/2 NE/4; S/2 NW/4.
SECTION 35: W/2 NE/4; NW/4; N/2 SW/4; SW/4 SW/4; NW/4 SE/4.
SECTION 36: E/2; SE/4 SW/4.

**TOWNSHIP 10 NORTH, RANGE 4 WEST**

SECTION 1: ENTIRE SECTION.
SECTION 2: W/2 NE/4; E/2 NW/4.
SECTION 3: ENTIRE SECTION.
SECTION 5: ENTIRE SECTION.
SECTION 6: E/2; E/2 NW/4; SW/4 NW/4; SW/4.
SECTION 7: ENTIRE SECTION.
SECTION 9: ENTIRE SECTION.
SECTION 11: E/2 NE/4; SW/4 NE/4; SE/4 NW/4; W/2 NW/4; S/2.
SECTION 17: ENTIRE SECTION.
SECTION 19: E/2; SE/4 NW/4; W/2 NW/4; SW/4.
SECTION 20: ENTIRE SECTION.
SECTION 21: SE/4 NE/4; W/2 NE/4; NE/4 SE/4; W/2.
SECTION 28: NW/4; NE/4 SW/4.
SECTION 30: W/2 SW/4; N/2; NE/4 SE/4 LESS 2.02 ACRES IN THE SOUTHWEST CORNER IN AN OBLONG SHAPE 3.18 CHAINS EAST AND WEST BY 6.36 CHAINS NORTH AND SOUTH.

**TOWNSHIP 10 NORTH, RANGE 5 WEST**

SECTION 1: W/2 NE/4; W/2.
SECTION 2: S/2 NE/4; SE/4; N/2 NW/4; S/2 SW/4.
SECTION 3: NE/4; NE/4 SE/4; SE/4 SE/4 NW/4; W/2 SE/4 NW/4; NW/4 NW/4; NE/4 NW/4 LESS 6 ACRES MORE PARTICULARLY DESCRIBED AS FOLLOWS: BEGINNING AT A POINT 5 CHAINS SOUTH OF THE NORTHWEST CORNER AND RUN THENCE EAST 4 CHAINS, THENCE SOUTH 15 CHAINS, THENCE WEST 4 CHAINS, THENCE NORTH 15 CHAINS TO THE POINT OF BEGINNING.
SECTION 4: N/2 NW/4 NE/4; NW/4 SE/4; W/2 E/2 NW/4; W/2 NW/4; SW/4.
SECTION 8: S/2 SE/4; SE/4 SW/4.
SECTION 9: SW/4 NW/4; NW/4 SW/4.
SECTION 10: NE/4; W/2 SE/4 LESS 1 ACRE IN A SQUARE IN THE NORTHWEST

CORNER; NE/4 NW/4 LESS 12 ACRES IN A SQUARE IN THE NORTHWEST CORNER; SE/4 NW/4; E/2 SW/4; NW/4 SW/4; SW/4 SW/4 LESS 4 ACRES IN A SQUARE IN THE SOUTHEAST CORNER.

SECTION 11: ENTIRE SECTION.
SECTION 12: W/2 NE/4; NW/4; N/2 SW/4; N/2 SE/4 SW/4; W/2 SW/4 SW/4.
SECTION 13: NW/4 SW/4.
SECTION 14: NE/4 SE/4; N/2 NW/4; W/2 SW/4; THAT PART OF THE SE/4 SE/4 EAST OF THE WEST PRONG OF COULEY CREEK.
SECTION 15: W/2 NE/4; S/2 SE/4; E/2 NW/4; NW/4 NW/4.
SECTION 16: NE/4.
SECTION 19: N/2 SE/4.
SECTION 20: NE/4 SW/4; SW/4 SW/4.
SECTION 22: N/2 S/2.
SECTION 23: ENTIRE SECTION.
SECTION 24: E/2; NW/4 NW/4.
SECTION 25: ENTIRE SECTION.
SECTION 26: S/2 NE/4; E/2 SE/4; NW/4 SE/4.
SECTION 28: SW/4.
SECTION 29: SE/4 SW/4; W/2 SW/4.
SECTION 32: N/2 NE/4.
SECTION 33: E/2 E/2; SW/4 SE/4; SE/4 NW/4; W/2 NW/4; SW/4.
SECTION 34: SW/4 NE/4; W/2 SE/4; S/2 NW/4; SW/4.
SECTION 35: E/2 NE/4.
SECTION 36: N/2.

**TOWNSHIP 11 NORTH, RANGE 3 WEST**

SECTION 5: W/2 SW/4.
SECTION 6: SW/4 SW/4; SE/4 SW/4 SOUTH OF GRAVEL HIGHWAY.
SECTION 7: S/2 NE/4; E/2 NW/4; N/2 NE/4 SOUTH OF GRAVEL HIGHWAY.
SECTION 8: W/2 NW/4.
SECTION 29: W/2 W/2.
SECTION 31: ENTIRE SECTION.
SECTION 32: W/2 NW/4; NW/4 SW/4.

**TOWNSHIP 11 NORTH, RANGE 4 WEST**

SECTION 1: SW/4 NE/4 LESS 2 ACRES IN NORTHWEST CORNER; SE/4 SE/4; NW/4 SE/4; SW/4 SE/4 NORTH OF L & A RAILROAD.
SECTION 3: NE/4 NW/4.
SECTION 5: SW/4.
SECTION 8: S/2 NE/4; E/2 SE/4; W/2 W/2 SE/4; SW/4 NW/4; SW/4.
SECTION 9: SE/4 NW/4; S/2.
SECTION 10: SW/4 NE/4; SE/4; S/2 NW/4; SW/4 SW/4.

SECTION 11: NE/4 NE/4; SE/4 NE/4 LESS 2 ACRES; W/2 NE/4; NE/4 SE/4; SE/4 SE/4 LESS 1 ACRE; W/2 SE/4; E/2 SW/4.
SECTION 12: NE/4 NE/4; SW/4 NE/4; S/2 NW/4.
SECTION 13: SE/4 NW/4; W/2 W/2.
SECTION 14: NW/4 NE/4; SW/4 SE/4 LESS 10 ACRES ON THE EAST SIDE; E/2 NW/4; SW/4 NW/4; SW/4.
SECTION 15: SE/4 NE/4; W/2 NE/4; SE/4; NW/4; NE/4 SW/4.
SECTION 16: E/2 NE/4; SW/4 NE/4; NE/4 SE/4; NE/4 NW/4; W/2 NW/4.
SECTION 17: ENTIRE SECTION.
SECTION 18: NE/4; SW/4.
SECTION 19: ENTIRE SECTION.
SECTION 20: ENTIRE SECTION.
SECTION 21: W/2 NE/4; SE/4; W/2.
SECTION 22: SW/4 NE/4 NE/4; N/2 NE/4 NE/4; W/2 SE/4 NE/4; W/2 NE/4, S/2.
SECTION 23: NW/4 NE/4; E/2 NW/4; NW/4 NW/4; N/2 SW/4 NW/4; SW/4; SE/4 SW/4 NW/4.
SECTION 24: W/2 NW/4; SW/4.
SECTION 25: SE/4; W/2.
SECTION 26: N/2 SE/4 NE/4; NW/4 NE/4; N/2 SW/4 NE/4; SE/4 SE/4; W/2 NW/4 SE/4; NW/4 SW/4 SE/4; S/2 SW/4 SE/4; NE/4 NW/4; SW/4; SE/4 NW/4 LESS 5 ACRES ON THE EAST SIDE.
SECTION 27: ENTIRE SECTION.
SECTION 28: ENTIRE SECTION.
SECTION 29: ENTIRE SECTION.
SECTION 30: E/2 NE/4; N/2 NW/4 NE/4; SE/4; NW/4 NW/4; NE/4 SW/4; S/2 SW/4.
SECTION 31: E/2 NE/4; NW/4 NE/4; E/2 SE/4; NE/4 NW/4; W/2 NW/4, SE/4 SW/4; NW/4 SW/4; NW/4 SE/4 LESS 12 ACRES IN A SQUARE IN THE SOUTHWEST CORNER; SW/4 SE/4 LESS 10 ACRES IN A SQUARE IN THE NORTHWEST CORNER.
SECTION 32: ENTIRE SECTION.
SECTION 33: ENTIRE SECTION.
SECTION 34: ENTIRE SECTION.
SECTION 35: E/2 NE/4; NW/4 NE/4; NE/4 SE/4; W/2.
SECTION 36: ENTIRE SECTION.

**TOWNSHIP 11 NORTH, RANGE 5 WEST**

SECTION 1: SE/4 SE/4; W/2 SE/4; W/2 NW/4; SE/4 SW/4.
SECTION 2: NE/4 NE/4; W/2 NE/4; SE/4 SE/4; NW/4; NW/4 SW/4.
SECTION 3: NE/4 SE/4; N/2; NE/4 SW/4; W/2 SW/4.
SECTION 4: ENTIRE SECTION EAST OF SALINE BAYOU.
SECTION 10: W/2 E/2; SE/4 SE/4; N/2 NW/4; SE/4 SW/4.
SECTION 11: NW/4 SE/4.
SECTION 12: SE/4 SE/4; SW/4 NW/4; NW/4 SW/4.
SECTION 13: S/2.

SECTION 14: SE/4 NE/4; E/2 SE/4; SW/4 SE/4; SE/4 NW/4; NE/4 SW/4; FRACTIONAL NW/4 SW/4; FRACTIONAL SW/4 NW/4.
SECTION 15: W/2 NW/4; FRACTIONAL SW/4 NE/4; FRACTIONAL SE/4 NW/4; FRACTIONAL S/2.
SECTION 37: THAT PART OF SAID SECTION OTHERWISE KNOWN AS EMANUEL PRUDHOMME ENTRY WITHIN THE LIMITS OF SECTIONS 14 AND 15.
SECTION 21: NE/4 NE/4.
SECTION 22: E/2; NE/4 NW/4; S/2 NE/4 SW/4; SE/4 SW/4; E/2 SW/4 SW/4; ALL THAT PART OF THE N/2 NE/4 SW/4, S/2 NW/4, NW/4 SW/4 AND W/2 SW/4 SW/4 LYING EAST OF THE MONROE-NATCHITOCHES ROAD.
SECTION 23: NE/4; W/2.
SECTION 24: ENTIRE SECTION.
SECTION 25: ENTIRE SECTION.
SECTION 26: NE/4 NE/4; NW/4 SE/4 NE/4; W/2 NW/4 NE/4; N/2 SW/4 NE/4; E/2 SE/4; SW/4 SE/4; NE/4 NW/4; N/2 NE/4 SE/4 NW/4; W/2 SE/4 NW/4; W/2 NW/4.
SECTION 27: NE/4; W/2 SE/4 SE/4; W/2 SE/4; W/2.
SECTION 28: E/2.
SECTION 33: E/2 NE/4; SW/4 NE/4; SE/4; W/2.
SECTION 34: ENTIRE SECTION.
SECTION 35: E/2; E/2 NW/4; SW/4 NW/4; SW/4.
SECTION 36: NE/4 NE/4; W/2 NE/4; SE/4; W/2.

**TOWNSHIP 12 NORTH, RANGE 3 WEST**

SECTION 30: N/2 SW/4 NW/4; NE/4 SW/4.
SECTION 31: S/2 NW/4; W/2 SW/4.

**TOWNSHIP 12 NORTH, RANGE 4 WEST**

SECTION 6: SE/4 SE/4; W/2 SE/4; NE/4 NW/4; W/2 NW/4; SW/4.
SECTION 7: ENTIRE SECTION.
SECTION 8: SW/4.
SECTION 16: THAT PART OF N/2 LYING WEST OF DUGDEMONIA BAYOU; SE/4 SE/4; NW/4 SW/4; NW/4 SE/4; THAT PART OF NE/4 SE/4 LYING SOUTHWEST OF DUGDEMONIA BAYOU.
SECTION 17: S/2 NW/4 NE/4; SW/4 NE/4; SW/4 SE/4; S/2 NE/4 NW/4; SE/4 NW/4; W/2 NW/4; SW/4.
SECTION 18: ENTIRE SECTION.
SECTION 19: ENTIRE SECTION.
SECTION 20: NE/4 NE/4; W/2 NE/4; SE/4; W/2.
SECTION 21: SW/4 SW/4.
SECTION 22: E/2 SE/4.
SECTION 23: S/2 NW/4 SW/4; SW/4 SW/4.
SECTION 25: S/2 NE/4; E/2 NW/4.

SECTION 26: SE/4; S/2 SW/4.
SECTION 27: NE/4 SE/4 LESS 3 ACRES MORE PARTICULARLY DESCRIBED AS FOLLOWS: BEGIN AT THE SOUTHEAST CORNER OF SAID FORTY, RUN THENCE WEST 9 CHAINS AND 50 LINKS,THENCE NORTH 7 CHAINS AND 50 LINKS FOR A POINT OF BEGINNING, RUN THENCE WEST 5 CHAINS, THENCE NORTH 6 CHAINS, THENCE EAST 5 CHAINS, THENCE SOUTH 6 CHAINS TO THE POINT OF BEGINNING.
SECTION 28: W/2 SE/4 SE/4; W/2 NW/4 NW/4; S/2 SW/4.
SECTION 29: ENTIRE SECTION.
SECTION 30: N/2.
SECTION 33: E/2 NE/4; SW/4 NE/4; NE/4 NW/4; W/2 NW/4; S/2.
SECTION 34: NE/4; N/2 SE/4; E/2 NW/4; SW/4 NW/4; S/2 NE/4 SW/4; N/2 SE/4 SW/4; W/2 SW/4.
SECTION 35: NE/4; S/2 NE/4 SE/4; N/2 SE/4 SE/4; NW/4 SE/4; W/2 NW/4 NW/4; NE/4 SW/4; W/2 SW/4.
SECTION 36: E/2 NE/4; SW/4 NE/4; NW/4 SE/4; SE/4 NW/4; W/2 NW/4; N/2 SW/4.

**TOWNSHIP 12 NORTH, RANGE 5 WEST**

SECTION 1: ENTIRE SECTION.
SECTION 2: ENTIRE SECTION.
SECTION 3: E/2; E/2 NW/4; S/2 SW/4.
SECTION 4: SE/4; W/2.
SECTION 5: ALL OF E/2 LYING EAST OF SALINE BAYOU.
SECTION 8: ALL OF E/2 LYING EAST OF SALINE BAYOU.
SECTION 9: E/2; NW/4; E/2 SW/4; ALL OF W/2 SW/4 LYING EAST OF SALINE BAYOU.
SECTION 10: N/2; SE/4 SE/4.
SECTION 11: ENTIRE SECTION.
SECTION 12: ENTIRE SECTION.
SECTION 13: ENTIRE SECTION.
SECTION 14: E/2; NW/4; N/2 SW/4; SE/4 SW/4; N/2 SW/4 SW/4.
SECTION 15: E/2 NE/4; SW/4 NE/4; SE/4; S/2 SW/4.
SECTION 16: ENTIRE SECTION LYING EAST OF SALINE BAYOU.
SECTION 22: W/2 NE/4 NE/4; NW/4 NE/4; NE/4 NW/4; W/2 W/2; SE/4 NW/4 LESS 5 ACRES IN A SQUARE IN THE SOUTHEAST CORNER; NE/4 SW/4 LESS 3 ACRES IN A SQUARE IN THE NORTHEAST CORNER, ALSO LESS 2 ACRES DESCRIBED AS FOLLOWS: BEGINNING AT THE SOUTHWEST CORNER OF THE NE/4 SW/4, RUN THENCE NORTH ALONG THE WEST LINE OF THE FORTY 110 YARDS, THENCE EAST 154 YARDS FOR A POINT OF BEGINNING, THENCE NORTH 140 YARDS, THENCE EAST 70 YARDS, THENCE SOUTH 140 YARDS, THENCE WEST 70 YARDS TO THE POINT OF BEGINNING.
SECTION 23: E/2; E/2 NW/4; SW/4 NW/4; SW/4.
SECTION 24: ENTIRE SECTION.

SECTION 25: ENTIRE SECTION.
SECTION 26: NE/4 NE/4; N/2 SE/4 NE/4; W/2 E/2; W/2.
SECTION 27: E/2; NW/4; E/2 SW/4.
SECTION 28: SW/4 SE/4; THAT PART OF S/2 SW/4 LYING EAST OF SALINE BAYOU.
SECTION 29: E/2 SE/4.
SECTION 33: ENTIRE SECTION LYING EAST OF SALINE BAYOU.
SECTION 34: W/2 SE/4 NE/4; W/2 NE/4; E/2 SE/4; SW/4 SE/4; S/2 NW/4 NW/4; SW/4 NW/4; W/2 SW/4; SE/4 SW/4; THAT PART OF NE/4 NW/4 MORE PARTICULARLY DESCRIBED AS FOLLOWS: BEGIN AT THE NORTHWEST CORNER OF THE SECTION AND RUN THENCE NORTH 88 DEGREES 16 MINUTES EAST 1298 FEET FOR A POINT OF BEGINNING, THENCE CONTINUE NORTH 88 DEGREES 16 MINUTES EAST 1298 FEET, THENCE DUE SOUTH 860 FEET, THENCE NORTH 58 DEGREES WEST 1530 FEET ALONG THE NORTH SIDE OF RIGHT OF WAY OF THE L & A RAILWAY, THENCE DUE NORTH 10 FEET TO THE POINT OF BEGINNING.
SECTION 35: NW/4 NW/4; E/2 SW/4 NW/4.

**TOWNSHIP 13 NORTH, RANGE 4 WEST**

SECTION 6: W/2 SW/4.
SECTION 18: SW/4 NW/4; SE/4 SW/4; NW/4 SW/4; W/2 SW/4 SW/4.
SECTION 31: N/2 NE/4.

**TOWNSHIP 13 NORTH, RANGE 5 WEST**

SECTION 1: SW/4 NE/4; S/2 NE/4 SE/4; SE/4 SE/4; SE/4 NW/4 SE/4; SW/4 SE/4; SE/4 NW/4; SE/4 SW/4; NW/4 SW/4.
SECTION 2: E/2 E/2; SW/4 NE/4; S/2 NW/4 SE/4; SW/4 SE/4; NW/4; S/2 S/2 SW/4.
SECTION 3: ENTIRE SECTION.
SECTION 4: ENTIRE SECTION.
SECTION 5: E/2; E/2 W/2; NW/4 NW/4.
SECTION 6: E/2 NE/4; NW/4 SW/4.
SECTION 7: SW/4 SE/4; NE/4 SW/4; THAT PART OF S/2 SW/4 LYING EAST OF SALINE BAYOU.
SECTION 8: E/2 NE/4; NW/4 NE/4; SW/4 SE/4.
SECTION 9: ENTIRE SECTION.
SECTION 10: NE/4; NE/4 SE/4; W/2 SE/4; W/2.
SECTION 11: SE/4 NE/4 LESS 2 ACRES IN A SQUARE IN THE NORTHEAST CORNER SOLD TO WINN PARISH SCHOOL BOARD; SW/4 NE/4; S/2 NE/4 SE/4; NW/4 NE/4 SE/4; SE/4 SE/4 SE/4; W/2 SE/4 SE/4; W/2 SE/4; NW/4; E/2 SW/4; NW/4 SW/4; E/2 SW/4 SW/4.
SECTION 12: NE/4; NE/4 SE/4; SW/4 SE/4; SE/4 SW/4.
SECTION 13: SE/4 NE/4; W/2 NE/4; NE/4 SE/4; N/2 SE/4 SE/4; W/2 SE/4; E/2 NW/4; SW/4.
SECTION 14: S/2 NE/4; SE/4; E/2 NW/4; SW/4 NW/4; E/2 SW/4; NW/4 SW/4.

SECTION 15: S/2 NE/4; SE/4; W/2 NW/4; SW/4.

SECTION 16: E/2; NW/4; N/2 SW/4; E/2 SE/4 SW/4.

SECTION 17: NE/4; N/2 NE/4 SE/4; NW/4 SE/4; SE/4 NW/4; SW/4; SW/4 SE/4 LESS 5 ACRES IN A SQUARE IN THE SOUTHWEST CORNER; NE/4 NW/4 LESS 1 ACRE MORE PARTICULARLY DESCRIBED AS FOLLOWS: BEGIN AT A POINT 100 YARDS NORTH OF THE SOUTHWEST CORNER OF THE NE/4 NW/4, RUN THENCE NORTH 70 YARDS, THENCE EAST 70 YARDS, THENCE SOUTH 70 YARDS, THENCE WEST 70 YARDS TO THE POINT OF BEGINNING.

SECTION 18: W/2 NE/4; NE/4 SE/4; THAT PART OF THE SE/4 SE/4, SW/4 SE/4, NW/4 SE/4, NE/4 NW/4, NW/4 NW/4 AND SE/4 NW/4 LYING EAST OF SALINE BAYOU.

SECTION 19: ALL OF E/2 NE/4 LYING EAST OF SALINE BAYOU.

SECTION 20: SE/4 SE/4; W/2 NW/4; NE/4 SE/4 LESS THE WEST 120 YARDS ACROSS SAID FORTY ACRES; SW/4 SE/4 LESS 8 ACRES IN A SQUARE IN THE NORTHEAST CORNER OF SAID FORTY.

SECTION 21: E/2; E/2 NW/4; E 3/4 SW/4 NW/4; SW/4.

SECTION 22: NE/4 NE/4 LESS 3 ACRES IN A SQUARE IN THE SOUTHEAST CORNER; W/2 NE/4; SE/4 NE/4; SE/4; W/2.

SECTION 23: E/2; E/2 NW/4; SW/4 NW/4; SW/4.

SECTION 24: S/2 NE/4; S/2; E/2 NW/4; NW/4 NW/4.

SECTION 25: E/2 SW/4 SE/4; E/2 NW/4; W/2 NE/4 LESS 15 ACRES ON THE WEST SIDE DESCRIBED AS FOLLOWS: BEGINNING AT THE SOUTHWEST CORNER OF NW/4 NE/4, RUN THENCE DUE EAST 10 CHAINS, THENCE NORTH 15 CHAINS, THENCE WEST 10 CHAINS, THENCE SOUTH 15 CHAINS TO THE POINT OF BEGINNING.

SECTION 26: ENTIRE SECTION.

SECTION 27: NE/4 NE/4; N/2 SE/4 NE/4; W/2 NE/4; NE/4 NE/4 SE/4; S/2 NE/4 SE/4; S/2 SE/4; W/2 NW/4 SE/4; NE/4 NW/4; W/2 NW/4; S/2 SE/4 SW/4; 5 ACRES IN A SQUARE IN THE SOUTHEAST CORNER OF SW/4 SW/4.

SECTION 28: NE/4; N/2 SE/4 SE/4; SW/4 SE/4; E/2 NW/4; NW/4 NW/4; N/2 NE/4 SW/4; NW/4 SW/4 LESS 10 ACRES IN A SQUARE IN THE NORTHWEST CORNER; W/2 SW/4 SW/4.

SECTION 29: NE/4 NE/4; W/2 NE/4; SE/4; ALL THAT PART OF THE W/2 LYING EAST OF SALINE BAYOU.

SECTION 32: ENTIRE SECTION LYING EAST OF SALINE BAYOU.

SECTION 33: S/2 NE/4 NE/4; SE/4 NE/4; NW/4 NE/4; N/2 SW/4 NE/4; SW/4 SW/4 NE/4; NE/4 SE/4; SE/4 SE/4 LESS 5.50 ACRES IN THE SOUTHEAST CORNER DESCRIBED AS FOLLOWS: BEGIN AT THE SOUTHEAST CORNER OF SAID FORTY, RUN THENCE WEST 40 RODS, THENCE NORTH 22 RODS, THENCE EAST 40 RODS, THENCE SOUTH 22 RODS TO THE POINT OF BEGINNING; NW/4 SE/4; E/2 NW/4; SW/4 NW/4; SW/4.

SECTION 34: E/2; SW/4; S/2 NW/4; NE/4 NW/4; NW/4 NW/4 LESS 2 ACRES DESCRIBED AS FOLLOWS: BEGIN AT THE NORTHWEST CORNER OF THE SECTION, RUN THENCE SOUTH 70 YARDS, THENCE EAST 140 YARDS, THENCE

NORTH 70 YARDS TO THE NORTH BOUNDARY LINE OF THE SECTION, THENCE WEST 140 YARDS TO THE POINT OF BEGINNING.

SECTION 35: ENTIRE SECTION.

SECTION 36: W/2 NW/4 NE/4; S/2 NE/4; SE/4; E/2 NW/4; SW/4 NW/4; SE/4 SW/4; NW/4 NW/4 LESS 2 ACRES IN THE NORTHWEST CORNER DESCRIBED AS FOLLOWS: BEGINNING AT THE NORTHWEST CORNER OF THE SECTION, RUN THENCE DUE EAST 209 FEET, THENCE SOUTH 418 FEET, THENCE WEST 209 FEET, THENCE NORTH 418 FEET TO THE POINT OF BEGINNING.

CONTAINING 98,434.28 ACRES, MORE OR LESS, IN WINN PARISH.