# In the United States Court of Federal Claims

No. 00-512L

(Filed: May 2, 2012)

_____

| | |
|---|---|
| PETRO-HUNT, L.L.C., * | |
| * | |
| * | Takings action; Motion to dismiss under |
| Plaintiff, * | RCFC 12(b)(1); 28 U.S.C. § 1500; Judicial |
| * | takings; Supplemental pleading under RCFC |
| v. * | 15(d); Portions of complaint dismissed. |
| * | |
| THE UNITED STATES, * | |
| * | |
| Defendant. * | |

_____

**OPINION**

_____

*J. Ralph White,* White Law Firm, New Orleans, LA, for plaintiff.

*William J. Shapiro*, Environment and Natural Resources Division, United States Department of Justice, Washington, D.C., with whom was Assistant Attorney General *Ignacia S. Moreno*, for defendant.

**ALLEGRA, Judge:**

Defendant has moved to dismiss plaintiff's complaint under RCFC 12(b)(1), asserting that the prior filing of a district court action deprived this court of jurisdiction under 28 U.S.C. § 1500. For the reasons that follow, the court **GRANTS**, in part, and **DENIES**, in part, this motion.

**I.     BACKGROUND**[1]

---

[1] These facts are primarily drawn from plaintiff's complaint and, for purpose of this motion, are assumed to be correct. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). Additional procedural details are drawn from the docket of plaintiff's district court action.

From November 1934 through January 1937, Bodcaw Lumber Company of Louisiana, Inc. (Bodcaw Lumber), and Grant Timber & Manufacturing Company of Louisiana, Inc. (Grant Timber) conveyed the surface estates of 180,000 non-contiguous acres to the United States Forest Service (the Forest Service) for the creation of the Kisatchie National Forest. The eleven instruments of transfer all expressly excluded the mineral servitudes, which the grantors reserved for Good Pine Oil, a joint venture created by Bodcaw Lumber, Grant Timber, and three other lumber companies. In 1940, the Louisiana Legislature passed Act 315, creating an exception to the state's ten-year mineral prescription law and making mineral rights underlying land conveyed to the United States "imprescriptible." In 1942, Nebo Oil Company acquired all of the mineral rights formerly held by Good Pine Oil.

In 1948, the United States filed a quite title action in district court to determine the owner of a particular mineral servitude underlying a parcel that was a part of the 180,000 acre tract Bodcaw Lumber and Grant Timber granted to the United States. In 1950, a Louisiana district court, relying on Louisiana's Act 315, held that the owner of the mineral servitude was an owner in perpetuity. *United States v. Nebo Oil Co.*, 90 F. Supp. 73 (W.D. La. 1950). The Fifth Circuit affirmed the finding that the mineral servitudes were imprescriptible and belonged to Nebo Oil. *United States v. Nebo Oil Co.*, 190 F.2d 1003 (5th Cir. 1951).

Two decades later, in a 1973 case with similar facts, the Supreme Court held that Act 315 was hostile to the United States' interests and could not be borrowed as a rule of decision in federal court. *United States v. Little Lake Misere Land Co., Inc.*, 412 U.S. 580, 604 (1973). Relying on this decision, in 1991, the United States began granting mineral leases on Forest Service lands it had acquired from Bodcaw Lumber and Grant Timber. In 1998, Petro-Hunt L.L.C. (Petro-Hunt or plaintiff) became the record holder of a 64.3 percent undivided interest in the mineral servitudes previously owned by Nebo Oil.

On February 18, 2000, Petro-Hunt – along with two other oil and gas companies – filed suit against the United States in the U.S. District Court for the Western District of Louisiana. Their complaint requested a declaratory judgment quieting their title to the property, but alternatively asserted "that the actions of the United States in confiscating their mineral interests amounts to an unconstitutional taking in direct violation of the Fifth Amendment of the United States Constitution, for which Plaintiffs should be compensated." In its June 5, 2000, response to this complaint, the United States asserted that the district court lacked jurisdiction to declare an unconstitutional takings and award compensation. On August 24, 2000, Petro-Hunt filed a complaint in this court alleging a Fifth Amendment takings. On October 31, 2000, the parties filed a joint motion to stay the case in this court pending resolution of the district court action. That motion was granted by this court on November 2, 2000. On June 29, 2001, plaintiff filed its first amended complaint in the district court, which still included an "alternative" request for relief, stating that "in the event that Plaintiffs are not found to be entitled to the declaratory relief sought above, Plaintiffs pray for a money judgment against the United States of America in an amount that will represent just compensation for the unconstitutional taking of the Plaintiffs' Mineral Rights in violation of the Fifth Amendment of the United States Constitution."

The District Court for the Western District of Louisiana initially granted plaintiff's motion for summary judgment on *res judicata* grounds, *Petro-Hunt L.L.C. v. United States*, 179 F. Supp. 2d 669 (2001), but the Fifth Circuit reversed, finding that the 1950 opinion had only decided the ownership of the single parcel at issue in that case. *Petro-Hunt L.L.C. v. United States*, 365 F.3d 385 (5th Cir. 2004). On remand, the parties stipulated that Petro-Hunt retained control of only the *Nebo Oil* servitude and five others that had remained in use, constituting approximately 109,844.5 acres, while the United States had gained ownership of the remaining ninety servitudes through prescription. The Fifth Circuit affirmed a final judgment giving effect to this stipulation, *Petro-Hunt L.L.C. v. United States*, 2007 WL 715270 (5th Cir. 2007), and the U.S. Supreme Court denied certiorari on March 30, 2008. *Petro-Hunt L.L.C. v. United States*, 128 S. Ct. 1471 (2008).

On May 27, 2008, the court lifted the stay in this case. On June 25, 2008, plaintiff filed an amended seven-count complaint asserting permanent and temporary takings, breaches of the original land conveyance contract, and breaches of the covenant of good faith and fair dealing. On September 2, 2008, defendant filed a motion to dismiss, or, alternatively, for summary judgment. On November 6, 2009, the court granted, in part, and denied, in part, defendant's motion to dismiss. It dismissed plaintiff's permanent takings claims and those of its temporary takings claims that were untimely under the six-year limitations period found in 28 U.S.C. § 2501, but found that plaintiff could assert temporary takings claims as to the fifty-six mineral leases executed within the limitations period. *Petro-Hunt, L.L.C. v. United States*, 90 Fed. Cl. 51 (2009). On September 16, 2010, plaintiff filed a "Restated Second Amended Complaint" with three counts, deleting the dismissed claims (while reserving the right to later appeal this court's decision) and adding a judicial takings claim based upon the Supreme Court's decision in *Stop the Beach Renourishment, Inc. v. Florida Dept. of Env'l Protection*, 130 S. Ct. 2592 (2010).

On March 12, 2010, the court set a discovery schedule, with discovery to be completed by July 15, 2011. On December 22, 2010, the court extended this completion date to January 12, 2012. On May 31, 2011, defendant filed a motion to dismiss this cases for lack of jurisdiction under RCFC 12(b)(1). Defendant contends that this court lacks jurisdiction over this matter under 28 U.S.C. § 1500. Briefing and argument of this motion have now been completed.[2]

---

[2] On November 17, 2011, plaintiff filed a new complaint in this court, which reasserts plaintiff's seven original claims and adds its judicial takings claim. Defendant opposed plaintiff's motion to stay that case (No. 11-775), asking instead that it be dismissed as duplicative of the instant case. On December 16, 2011, the court granted plaintiff's motion to stay No. 11-775, but ordered defendant to respond to plaintiff's new complaint. Defendant did so on January 17, 2012, moving to dismiss the new complaint under RCFC 12(b)(1) and 12(b)(6). Briefing on that motion remains stayed.

## II.  DISCUSSION

Deciding a motion to dismiss "starts with the complaint, which must be well-pleaded in that it must state the necessary elements of the plaintiff's claim, independent of any defense that may be interposed." *Holley v. United States*, 124 F.3d 1462, 1465 (Fed. Cir. 1997); *see also Bell Atl. Corp.*, 550 U.S. at 554–55.  In particular, the plaintiff must establish that the court has subject matter jurisdiction over its claims.  *Trusted Integration, Inc. v. United States*, 659 F.3d 1159, 1163 (Fed. Cir. 2011); *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988).

Plaintiff asserts federal subject-matter jurisdiction in this court under the Tucker Act, 28 U.S.C. § 1491.  That provision grants this court "jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States . . . ." 28 U.S.C. § 1491(a)(1).  It is well-established that takings actions are covered by this grant of jurisdiction.  *See Keene Corp. v. United States*, 508 U.S. 200, 205 (1993); *Bywaters v. United States*, 670 F.3d 1211, 1224 (Fed. Cir. 2012).  Defendant, however, claims that jurisdiction is lacking here owing to the application of 28 U.S.C. § 1500.

Section 1500 of Title 28 provides:

> The United States Court of Federal Claims shall not have jurisdiction of any claim for or in respect to which the plaintiff or his assignee has pending in any other court any suit or process against the United States or any person who, at the time when the cause of action alleged in such suit or process arose, was, in respect thereto, acting or professing to act, directly or indirectly under the authority of the United States.

28 U.S.C. § 1500.  "[T]he words of the statute are plain," the Supreme Court long ago stated, "with nothing in the context to make [its] meaning doubtful."  *Corona Coal Co. v. United States*, 263 U.S. 537, 540 (1924); *see also Johns-Manville Corp. v. United States*, 855 F.2d 1556, 1565 (Fed. Cir. 1988), *cert. denied*, 489 U.S. 1066 (1989).  Those words speak in terms of subject matter jurisdiction and "bar jurisdiction over the claim of a plaintiff who, upon filing [with the Court of Federal Claims], has an action pending in any other court 'for or in respect to' the same claim." *Keene Corp.*, 508 U.S. at 209; *see also Nez Perce Tribe v. United States*, 83 Fed. Cl. 186, 189 (2008).  To determine whether this statute applies here, the court must answer two fundamental questions:  (i) whether the district court action was "pending" at the time jurisdiction under section 1500 is measured; and (ii) if so, whether the claims presented to the district court were the same as those in the instant case.  *See Kaw Nation of Oklahoma v. United States*, 2012 WL 639928, at *2 (Fed. Cl. Feb. 29, 2012); *Griffin v. United States*, 85 Fed. Cl. 179, 184 (2008), *aff'd*, 621 F.3d 1363 (Fed. Cir. 2010).

Plaintiff's "Restated Second Amended Complaint" rehashes many of the facts that were asserted in its initial complaint in this court.  Count II of that complaint avers that the United

States effectuated a temporary takings of ninety-one servitudes by issuing mineral leases to parties that effectively blocked Petro-Hunt from engaging in any activity on the servitudes and precluded Petro-Hunt from itself engaging in any leasing activity. Count III of the complaint avers that the United States effectuated a similar temporary takings of five (or six) servitudes during the pendency of the quiet title action.[3] Finally, Count VIII of this complaint avers that the Fifth Circuit's decision that ninety-six mineral servitudes "belonging to Petro-Hunt as established in *Nebo Oil*, and by contract with the United States, were subject to prescription was contrary to its prior decision in *Nebo Oil* and resulted in a judicial taking of Petro-Hunt's established property rights." For reasons that will become apparent, the two-pronged section 1500 analysis must be applied twice in this case – once to plaintiff's temporary takings claims and, again, to its more recent judicial takings claim.

A.

From the outset of this case, it has been plaintiff's claim that the United States effectuated a takings of its mineral servitudes by issuing mineral leases to third parties and essentially precluding Petro-Hunt from engaging in leasing activities with respect to those properties. *See* Complaint No. 00-512L (Aug. 24, 2000) at ¶ 12.b. Plaintiff's temporary takings claims represent a subset of this broader claim and relate to actions that took place in the six-year period before their complaint was filed in 2000. *See Petro-Hunt, L.L.C.*, 90 Fed. Cl. at 66-67 (describing the nature of these claims). The district court action was pending when this initial complaint was filed. This is important, because, as with most jurisdictional statutes, the impact of section 1500 is measured at the time the lawsuit in this court is filed. *Keene Corp.*, 508 U.S. at 207; *see also Trusted Integration*, 659 F.3d at 1166 n.2; *Kaw Nation*, 2012 WL 639928, at *5 ("[The] measuring point, in the case of section 1500, is when the complaint is filed."); *Nez Perce Tribe v. United States*, 101 Fed. Cl. 139, 145 (2011); *Griffin*, 85 Fed. Cl. at 187. Accordingly, it is dispositive, for the first prong of the section 1500 analysis, that the district court action here was pending at the time the action in this court was filed. *See Trusted Integration*, 659 F.3d at 1166 n.2.

For section 1500 to apply to the temporary takings claims, however, the suit in this court and that in the district court must also be "for or in respect to" the same claim(s). In *United States v. Tohono O'odham Nation*, 131 S. Ct. 1723 (2011), the Supreme Court held that this requirement is met when two claims are "based on substantially the same operative facts, regardless of the relief sought in each suit." *Id*. at 1727; *see also Trusted Integration*, 659 F.3d at 1164. The Court, nonetheless, suggested that the nature of the claims pled may be relevant in helping to identify which facts are "operative" – that is, the "facts parties must prove" in order to prevail. *Tohono*, 131 S. Ct. at 1730; *see also Trusted Integration*, 659 F.3d at 1168. Hence, determining whether two claims are "based on substantially the same operative facts" requires more than a side-by-side comparison of the two complaints to see how much verbiage is in

---

[3] The heading on this count refers to "five" servitudes, while the body of the count refers to "six."

common. Before performing such comparisons, rather, the court must first isolate the facts in the complaint that are "operative," *i.e.*, those that must be proven in order to recover on a given claim. *Trusted Integration*, 659 F.3d at 1168; *cf. Rosebud Sioux Tribe v. United States*, 102 Fed. Cl. 429, 437 (2011). Similarity in those "operative" facts satisfies the second prong of the section 1500 analysis; conversely, differences in those operative facts can serve to render two claims dissimilar, making section 1500 inapplicable. The Supreme Court confirmed this in *Tohono*, when it indicated that the claim comparison "can be informed by how claims are defined for *res judicata* purposes." *Trusted Integration*, 659 F.3d at 1164 (citing *Tohono*, 131 S. Ct. at 1730); *see also Muscogee (Creek) Nation of Oklahoma v. United States*, 2011 WL 6017188, at *4 (Fed. Cl. Dec. 2, 2011). As the Federal Circuit recently noted, the tests that governed the application of *res judicata* at the time the predecessor to section 1500 was enacted both focused on whether the legally determinative facts in the two suits were the same. *Trusted Integration*, 659 F.3d at 1168-69.[4]

Given these standards, this court has serious doubts as to whether the pendency of a typical quiet title action in the district court ought to preclude this court from having jurisdiction over a later-filed takings action.[5] But, the temporary takings portion of the case *sub judice*, as it turns out, is more straightforward because plaintiff raised a takings claim in its district court complaint that remained pending when plaintiff filed essentially the same takings claims in this court. Indeed, as its original complaint in this court advised, plaintiff filed the instant lawsuit more as a protective matter, in case the district court failed to award damages.[6] In circumstances

---

[4] Applying these principles, the Federal Circuit, in *Trusted Integration*, concluded that the presence, in a pending district court complaint, of counts based upon implied-in-fact contracts did not prevent this court from exercising jurisdiction over a separate count based upon breach of a licensing agreement. In this regard, the court noted that "[n]ot only are these distinct contracts, but their breach requires different conduct." 659 F.3d at 1168. It added that "[i]mportantly, the facts that would give rise to breach of either of these agreements are not legally operative for establishing the breach of the other." *Id*. To buttress this conclusion, the Federal Circuit analyzed the case under the *res judicata* principles identified in *Tohono*. It concluded that under the *res judicata* principles that were in effect when the predecessor of section 1500 was first enacted, a decision on the implied-in-fact contract would not be *res judicata* of the claim based upon the licensing agreement. 659 F.3d at 1168-70.

[5] *See*, *e.g. Trusted Integration*, 659 F.3d at 1168 (suggesting that the focus is on the "legally operative" facts; *Stockton East Water Dist. v. United States*, 101 Fed. Cl. 352, 359 (2011); *see generally,* Craig A. Schwartz, "Footloose: How to Tame the Tucker Act Shuffle After *United States v. Tohono O'Odham Nation*," 59 UCLA L. Rev. Discourse 2 (2011) (suggesting that "necessarily sequential" lawsuits ought not be covered by section 1500); *cf. Kingman Reef Atoll Invest., LLC v. United States*, 2012 WL 833888, at *33 (Fed. Cl. March 8, 2012); *Central Pines Land Co. v. United States*, 99 Fed. Cl. 394, 400-401 (2011).

[6] In this regard, plaintiff's original complaint in this court stated that:

- 6 -

like these, section 1500 is undoubtedly triggered, causing this court to lose jurisdiction over plaintiff's temporary takings claims. *See Pellegrini v. United States*, 2012 WL 171912, at *5 (Fed. Cl. Jan. 20, 2012); *Brandt v. United States*, 102 Fed. Cl. 72, 81-82 (2011). It is irrelevant, for this purpose, that the district court lacked jurisdiction over plaintiff's takings claim. *See*, *e.g.*, *Pellegrini*, 2012 WL 171912, at *5; *Young v. United States*, 60 Fed. Cl. 418, 424 (2004). Nor is this portion of plaintiff's complaint saved by the fact that plaintiff, in subsequent amendments to its complaint in this court, has refined further the legal theories on which its temporary takings claims are based. *See Keene*, 508 U.S. at 212 ("That the two actions were based on different legal theories [does] not matter."); *Trusted Integration*, 659 F.3d at 1163 (section 1500 "was enacted to prevent a claimant from seeking recovery in district court and the Court of Claims for the same conduct pleaded under different legal theories"). Those claims still rely upon facts that were operative in the district court action that was pending at the time the case *sub judice* was filed. Hence, section 1500 precludes this court from having jurisdiction over plaintiff's temporary takings claims.[7]

B.

The same conclusion, however, does not obtain as to plaintiff's judicial takings count. Count VIII of plaintiff's Restated Second Amended Complaint asserts that the Fifth Circuit's second decision in *Petro-Hunt L.L.C.*, holding that mineral servitudes belonging to Petro-Hunt were subject to prescription, "resulted in a judicial taking of Petro-Hunt's established property rights." Plaintiff asserts that this claim "arose when the United States Supreme Court denied

---

> [i]f, in plaintiff's Louisiana Quiet Title Act suit, the District Court rules that plaintiff was the owner of Plaintiff's Mineral Rights, but that the United States has taken same; then, to the extent the District Court does not award plaintiff damages and payment for the same pursuant to 28 U.S.C. § 2909(a), part (b), then plaintiff asks this Court to award it just compensation for this taking by the United States.

[7] The court is troubled that defendant initially moved to stay this case, then allowed this case to remain dormant while defendant was litigating cases like *Tohono*, and did not raise the section 1500 issue until recently, when the filing of a new suit for the same years at issue was barred by the statute of limitations contained in 28 U.S.C. § 2501. While the court hesitantly accepts defendant's explanation that the unfortunate phasing of its positions was inadvertent – designed neither to mislead the court nor to entrap plaintiff – defendant should expect, at the least, that its future entreaties to stay actions will fall on skeptical ears if there is any possibility that defendant will, at some later point, move to dismiss the same case under section 1500. Moreover, if ever asked again to dismiss a case in circumstances like these, the court will seriously consider whether monetary sanctions should be imposed upon defendant. *See also Northrop Grumman Computing Sys., Inc. v. United States*, 99 Fed. Cl. 651, 660 (2011) (noting that "courts have, on occasion, sanctioned a party viewed as having brought belatedly a motion to dismiss for lack of jurisdiction").

plaintiff's petition for *certiorari*." The Fifth Circuit's second decision was issued on March 6, 2007, and the Supreme Court's denial of *certiorari* was on March 3, 2008. Because these events occurred after the filing of plaintiff's original complaint, to the extent plaintiff's most recent complaint raises a judicial takings issue, it must be viewed not as an amended complaint under RFCF 15(c), but rather as a supplemental complaint under RCFC 15(d). The latter rule allows a party to "serve a supplemental pleading setting out any transaction, or occurrence or events that happened after the date of the pleading to be supplemented." *Id.*; *see also Prasco LLC v. Medicis Pharm. Corp.*, 537 F.3d 1328, 1337 (Fed. Cir. 2008); 6A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Fed. Prac. & Proc. § 1504, at 184 (hereinafter "Wright, Miller & Kane"). Recent cases confirm that a supplemental pleading may include a new cause of action "provided there is some relationship between the original and the later accruing material." *Id.* ; *see also Quaratino v. Tiffany & Co.*, 71 F.3d 58, 66 (2d Cir. 1995); *Keith v. Volpe*, 858 F.2d 467 (9th Cir. 1988); *Ohio Valley Envt'l Coal. v. U.S. Army Corps of Engineers*, 243 F.R.D. 253 (S.D. W.Va. 2007).

Defendant argues that, like an amended complaint, supplemental complaints cannot be used to avoid section 1500. That is true, however, only to a point. Supplemental pleadings under RCFC 15(d) may not be used to cure jurisdiction by adding new facts to a preexisting cause of action that, as originally pled, was barred under section 1500. In other words, if a pending district court complaint had the effect of barring, under section 1500, this court from exercising jurisdiction over a subsequently-filed suit, that defect cannot be cured by adding new facts to the old cause of action after the district court case is no longer pending. *See Central Pines Land Co. v. United States*, 99 Fed. Cl. 394, 403-04 (2011). But, that is not this case. Here, plaintiff filed a supplemental complaint that added an entirely new cause of action based upon a takings that allegedly occurred seven years after the filing of its original complaint. Unlike RCFC 15(c), RCFC 15(d) does not indicate whether such a supplemental pleading relates back to the date of the original complaint. Wright, Miller & Kane, *supra*, at § 1508. Construing the analogous Federal rules, various decisions hold that a supplemental pleading that "requires proof of independent operative facts peculiar to the transaction involved and constitutes a separate claim" does not relate back to the date the original complaint was filed for purposes of applying relevant statutes of limitation. *Blau v. Lamb*, 191 F. Supp. 906, 906 (S.D.N.Y. 1961), *rev'd on other grounds*, 314 F.2d 618 (2d Cir.), *cert. denied*, 375 U.S. 813 (1963); *see also William Inglis & Sons Baking Co. v. ITT Continental Baking Co., Inc.*, 668 F.2d 1014, 1057 (9th Cir. 1981) (following *Blau*); *Soler v. G & U, Inc.*, 103 F.R.D. 69, 75 (S.D.N.Y. 1984) (same); *see also Vann v. United States*, 420 F.3d 968, 974 (Ct. Cl. 1970); Wright, Miller & Kane, *supra*, at § 1508.

The logic of these cases suggests that section 1500 ought not apply to the portion of a supplemental complaint that raises a new claim that "requires proof of independent operative facts" if, at the time the supplemental complaint is filed, no other suit involving that same claim is pending in another court. This result makes eminent sense because, as this court recently observed, the new count in the supplemental complaint is an "independent claim[] that could have been brought in an entirely separate suit." *Stockton East Water Dist.*, 101 Fed. Cl. at 361. Conversely, it makes little sense to hold, as defendant essentially suggests, that plaintiff's

- 8 -

judicial takings claim is barred by section 1500 because that new count was added to a suit filed when the district court action was pending, but would not be barred if plaintiff chose to file a new suit featuring that count and then moved to consolidate that suit with this case.

Critically, plaintiff's judicial takings claim rests upon "independent operative facts" that are not only unlike those in the first two complaints it filed in this case, but also unlike those that were operative in the claims that it originally pursued in the district court. On brief, defendant never quite comes to grips with the fact that the judicial takings claim rests upon the Fifth Circuit's second opinion and that this opinion did not exist when plaintiff filed its action in the district court. The judicial takings claim thus rests on "legally operative" facts that were not at issue before the district court and requires proof of "different conduct." *Trusted Integration*, 659 F.3d at 1168. As such, it follows, *a fortiori*, that the judicial takings claim is not "for or in respect to" the claims originally filed in the district court. In such a situation, section 1500 does not apply. *See Stockton East Water Dist.*, 101 Fed. Cl. at 361-62. Accordingly, section 1500 does not require the dismissal of plaintiff's judicial takings claim.

C.

Finally, the court must reject plaintiff's argument that section 1500 violates the Equal Protection Clause of the Constitution. This claim is rooted in the notion that the statute makes arbitrary distinctions based upon the order in which suits are filed. *See Tecon Engineers, Inc. v. United States*, 343 F.2d 943 (Ct. Cl. 1965), *cert. denied*, 382 U.S. 976 (1966). Finding the statute invalid would be tempting if its constitutionality hinged on whether it was the most sensible and effective way to address the problem of duplicative litigation.[8] But, the latter is not the standard by which the constitutionality of this statute must be adjudged.

"The federal interest in ensuring that all citizens have access to the courts is obviously a weighty one." *Three Affiliated Tribes of Fort Berthold Reservation v. World Engineering*, 476 U.S. 877, 888 (1986); *see also Ca. Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 510, 513-514 (1972); *Bill Johnson's Rest., Inc. v. NLRB*, 461 U.S. 731, 741, 742-744 (1983). But, from time immemorial, that access has been subject to another foundational principle of our judicial system, *to wit*, that "[t]he Federal Government cannot be sued without its consent." *United States v. Navajo Nation*, 556 U.S. 287, 289 (2009); *FDIC v. Meyer*, 510 U.S. 471, 474 (1994); *see also* Alexander Hamilton, Federalist No. 81 ("It is inherent in the nature of sovereignty not to be amenable to the suit of an individual without its consent."). Given this, it should come as no surprise that Congress has broad discretion not only in generally defining the jurisdiction of the lower federal courts, but, particularly, in deciding the conditions under which the sovereign immunity of the United States will be waived. *See Crown Coat Front Co. v. United States*, 386 U.S. 503, 520 (1967); *State of Minnesota v. United States*, 305 U.S. 382, 388

---

[8] *See, e.g.*, *Griffin v. United States*, 85 Fed. Cl. 179, 191 (2008), *aff'd*, 621 F.3d 1363 (Fed. Cir. 2010)*; see also United Keetoowah Band of Cherokee Indians in Okla. v. United States*, 2012 WL 1005907, at *9 (Fed. Cl. March 27, 2012); *Kaw*, 2012 WL 639928, at *14.

(1939); *Luckenbach S.S. Co. v. United States*, 272 U.S. 533, 536-37(1926); *see also*, *Seaboard Lumber Co. v. United States*, 903 F.2d 1560, 1562-64 (Fed. Cir. 1990). There is little debate that Congress "employed [this] power" when it enacted section 1500. *Keene Corp.*, 508 U.S. at 207.

Because individuals seeking to sue the United States are not a "suspect class" and their access to federal courts under waiver statutes, like the Tucker Act, is not a "fundamental right," *see Miller v. United States*, 73 F.3d 878, 881 (9th Cir. 1993), Congress' classification of claims under section 1500 needs merely to be "rationally related" to a legitimate government interest. *See Vacco v. Quill*, 521 U.S. 739, 799-801 (1991); *see also Costo v. United States*, 248 F.3d 863, 870 (9th Cir. 2001) (Ferguson, J., dissenting). The classifications made by that statute, therefore, must be sustained "so long as there is a plausible policy reason for the classification, the legislative facts on which the classification is apparently based rationally may have been considered to be true by the governmental decision-maker, and the relationship of the classification to its goal is not so attenuated as to render the distinction arbitrary or irrational." *Fitzgerald v. Racing Ass'n of Central Iowa*, 539 U.S. 103, 107 (2003); *U.S. R.R. Retirement Bd. v. Fritz*, 449 U.S. 166, 174 (1980). This standard "does not allow [the court] to substitute [its] personal notions of good public policy for those of Congress." *Schweiker v. Wilson*, 450 U.S. 221, 234 (1981); *see also City of New Orleans v. Dulles*, 427 U.S. 297, 303 (1976).

Applying this standard, courts have regularly rejected challenges to waiver statutes premised upon the complaint that the waiver is granted to some parties and not to others, finding, in each instance, that Congress had a plausible reason for the classification. *See Obadele v. United States*, 52 Fed. Cl. 432, 441 (2002) (denying African-American plaintiffs from seeking redress under a statute granting reparations to interned Japanese-Americans, noting "[l]egislation inevitably benefits certain persons to the exclusion of others. But such classifications are not necessarily unconstitutional."); *Daliberti v. Republic of Iraq*, 97 F. Supp. 2d 38, 52 (D.D.C. 2000) (upholding withdrawal of sovereign immunity only as to nations classified as "sponsors of terrorism"); *O'Halloran v. United States*, 817 F. Supp. 829, 832 (N.D. Cal. 1993) (rejecting challenge to service requirements associated with certain waivers); *Montalva v. Graham*, 390 F. Supp. 533, 534 (E.D. Wisc. 1975) (administrative exhaustion requirement under Federal Tort Claims Act held not to violate equal protection).[9] The latter is also the case here.

---

[9] *See also Sealock v. Colorado*, 218 F.3d 1205, 1212 (10th Cir. 2000) (provisions of Colorado statute that excluded from waiver suits brought by incarcerated individuals did not violate equal protection); *Grimes v. Pearl River Valley Water Supply Dist.*, 930 F.2d 441, 444 (5th Cir. 1991) (finding it rational for state legislature to waive sovereign immunity of some state agencies, but not others); *Celli v. Metro-North Commuter RR.*, 891 F. Supp. 124, 127-28 (S.D.N.Y. 1995) ("[I]t is well settled law in this State that limitations imposed on actions as a condition of the State's limited waiver of sovereign immunity are matters of legislative discretion not amendable to an equal protection challenge."); *Gooslin v. State of Md.*, 752 A.2d 642, 644-45 (Md. App. 2000) (Maryland Tort Claims Act's cap on state liability not violative of equal protection); *Murphy v. Richland Memorial Hosp.*, 455 S.E. 2d 688, 690 (S.C. 1995) (shorter statute of limitations when suing state is "rationally designed to minimize the undue burden on the public entity); *Turnbull v. Fink*, 668 A.2d 1370 (De. 1995) (holding that statutory

The Supreme Court recently described the purpose of section 1500 as "sav[ing] the Government from burdens of redundant litigation." *Tohono*, 131 S. Ct. at 1730; *see also Keene Corp.*, 508 U.S. at 206; *Trusted Integration*, 659 F.3d at 1170 (indicating that the purpose of section 1500 was "to prevent claimants from seeking double recovery by maintaining two suits arising from the same factual foundation, but pleaded under different legal theories."). But, although one might get a different impression from reading defendant's briefs, Congress did not intend section 1500 to be all-encompassing, that is, to prevent all forms of redundant litigation, however encountered. *See Kaw Nation*, 2012 WL 639928, at *12. Nor is this required – from an equal protection standpoint, it is simply not true that if Congress wanted to bar some redundant litigation, it had to bar all of such litigation. Recent cases, moreover, make clear that the distinction drawn in *Tecon*, in which only suits filed before a suit filed in this court trigger the statute, makes sense by preventing a plaintiff from using the filing of a suit in a district court as a tactical device to divest this court of jurisdiction and produce a dismissal of its own lawsuit without prejudice. *See Kaw Nation*, 2012 WL 638828, at *16; *see also Tecon*, 343 F.2d at 949.[10]

---

waiver of sovereign immunity only up to $300,000 did not violate equal protection); *Woodard v. Laurens County*, 456 S.E. 2d 581 (Ga. 1995) ("A waiver of sovereign immunity is a mere privilege, not a right, and the extension of that privilege is solely a matter of legislative grace."); *Stout v. Grand Prairie Ind. Sch. Dist.*, 733 S.W. 2d 290 (Tex. App. 1987) (equal protection not violated by statute immunizing public school teachers from suits alleging tortuous conduct).

[10] In *Kaw*, defendant sought to have this court abandon the holding in *Tecon*. The court rejected that claim finding that *Tecon* remains binding precedent in this circuit. *Kaw Nation*, 2012 WL 639928, at *3-4; *see also United Keetoowah Band of Cherokee Indians in Okla. v. United States*, 2012 WL 1005907, at *3-4. The court went on, however, to discuss why *Tecon* was correctly decided, and, in so doing, pointed out the following example of why having later-filed district court actions trigger section 1500 made no sense –

> Another example of why defendant's expansive interpretation of section 1500 may backfire comes straight from the pages of *Tecon*. Recall, that in that case, it was the plaintiff who was arguing that its filing of a subsequent district court case deprived this court of jurisdiction and the defendant who was arguing otherwise. Defendant urged the latter position because it believed that a plaintiff should not be able to use the filing of a district court action to restart its case over from scratch. Imagine, then, a situation where a case like this one goes to trial and, for a variety of reasons, the plaintiff anticipates that it will lose. Under defendant's view, nothing would prevent that plaintiff from then filing a district court case seeking an accounting, thereby triggering a dismissal, without prejudice, under section 1500. The plaintiff could then proceed anew in the district court, having used this court as a place to conduct not a trial, but a "trial run"—the plaintiff would have its discovery from this case, a set of "draft" rulings from this court to guide its presentation, and even knowledge as to how particular witnesses will perform on the stand. . . . Under this scenario, there would not be the glancing

Accordingly, contrary to plaintiff's claims, there is a plausible reason for distinguishing between district court lawsuits filed before and after a complaint is filed in this court. And, indeed, every court to consider the constitutionality of section 1500 has held that it passes muster. *See Agustin v. United States*, 92 Fed. Appx. 786 (Fed. Cir. 2004) ("To the extent that Agustin claims that section 1500 is unconstitutional, that argument is without merit."); *Davis v. United States*, 30 Fed. Cl. 201, 204 (1993) (upholding the constitutionality of section 1500); *Donnelly v. United States*, 28 Fed. Cl. 62, 64-65 (1993) (same).

In sum, while it is regrettable that certain litigants may be unaware of the jurisprudence surrounding section 1500 and file their claims in the district court before filing in this court, that does not render section 1500 unconstitutional.

### III. CONCLUSION

Based on the foregoing, defendant's motion to dismiss is hereby **GRANTED,** in part, and **DENIED**, in part. On or before June 4, 2012, the parties shall file a joint status report indicating how this case (and No. 11-775) should proceed, with a proposed schedule, as appropriate. Before filing that report, the parties shall have at least one serious conversation regarding settlement of these matters.

**IT IS SO ORDERED**.

s/ Francis M. Allegra
Francis M. Allegra
Judge

---

overlap of cases that we have now, but rather a situation in which two full blown trials are conducted—certainly, the worst form of duplication imaginable—and likely the reason why defendant so many years ago wisely argued against the position that it espouses now. Asked about this scenario during oral argument, defendant's counsel indicated that the anomalous result described was dictated by Congress. This court thinks not.

*Kaw Nation*, 2012 WL 639928, at *16; *see also Tecon*, 343 F.2d at 949 (citing a similar example and stating that "[t]his court cannot permit control of its jurisdiction and administration of its functions at the mere whim of a litigant."); *Keetoowah Band*, 2012 WL 1005907, at *9.