# In the United States Court of Federal Claims

No. 00-512L

(Filed: December 19, 2013)
_____

|  |  |
|---|---|
| PETRO-HUNT, L.L.C.,<br><br>                  Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>                  Defendant. | *<br>*<br>*<br>*<br>*  Motion to compel production; Judicial<br>*  takings case; *Stop the Beach*; Documents<br>*  sought not relevant within the meaning of<br>*  RCFC 26(b)(1); Motion denied.<br>*<br>*<br>*<br>* |

_____

**OPINION**
_____

*Joseph Ralph White,* White Law Firm, New Orleans, LA, for plaintiff.

*William James Shapiro*, Environment and Natural Resources Division, United States Department of Justice, Washington, D.C., with whom was Assistant Attorney General *Ignacia S. Moreno*, for defendant.

**ALLEGRA, Judge:**

On June 21, 2013, Petro-Hunt, L.L.C. (plaintiff) filed a motion seeking an order compelling defendant to produce seven documents. On July 2, 2013, defendant filed its opposition to this motion, together with a privilege log, asserting that the requested documents are irrelevant and privileged. On August 19, 2013, defendant, per court order, submitted the seven documents for *en camera* review.[1] Subsequently, briefing on the motion was completed. On December 3, 2013, the court granted plaintiff's motion for leave to file a variety of supplemental exhibits. On December 5, 2013, the court conducted oral argument on the

---

[1] The Supreme Court has recognized the important role that *en camera* inspection of disputed documents often plays in determining the existence of a privilege. *See United States v. Zolin,* 491 U.S. 554, 568-69 (1989); *see also United States v. Nixon*, 418 U.S. 683, 714 (1974).

motions. On December 11, 2013, per the court's order, plaintiff filed supplemental authorities. For the reasons that follow, the court **DENIES** the motion to compel.

The Federal Circuit has instructed that "[q]uestions of the scope and conduct of discovery are, of course, committed to the discretion of the trial court." *Florsheim Shoe Co. v. United States*, 744 F.2d 787, 797 (Fed. Cir. 1984). In deciding either to compel or quash discovery, this court must balance potentially conflicting goals. It "'must be careful not to deprive a party of discovery that is reasonably necessary to afford a fair opportunity to develop and prepare the case.'" *Heat & Control Inc. v. Hester Indus., Inc.*, 785 F.2d 1017, 1024 (Fed. Cir. 1986) (quoting Fed. R. Civ. P. 26(b)(1), advisory comm. notes (1983)); *see also Epstein v. MCA, Inc.*, 54 F.3d 1422, 1423 (9th Cir. 1995). As the Supreme Court once famously indicated, "[n]o longer can the time-honored cry of 'fishing expedition' serve to preclude a party from inquiring into the facts underlying his opponent's case." *Hickman v. Taylor*, 329 U.S. 495, 507 (1947). On the other hand, *Hickman* cautioned that "discovery, like all matters of procedure, has ultimate and necessary boundaries . . . [L]imitations come into existence when the inquiry touches upon the irrelevant or encroaches upon the recognized domains of privilege." *Id*. at 507-08; *see also Vons Cos. v. United States*, 51 Fed. Cl. 1, 5 (2001); *Planning Research Corp. v. United States*, 4 Cl. Ct. 283, 296 (1983).

Encapsulating these considerations, RCFC 26(b)(1), like its Federal rules counterpart, provides that a "party may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." *See also In re EchoStar Comm. Corp.*, 448 F.3d 1294, 1300 (Fed.Cir.2006); *Vons*, 51 Fed. Cl. at 5. Consistent with the goal of promoting the "just and complete resolution of disputes," the Federal Circuit has stated that "[r]elevancy for purposes of Rule 26 is broadly construed." *Katz v. Batavia Marine & Sporting Supplies, Inc.*, 984 F.2d 422, 424 (Fed. Cir. 1993); *see also Centurion Indus., Inc. v. Warren Steurer and Assocs*., 665 F.2d 323, 326 (10th Cir.1981); *Evergreen Trading, LLC ex rel. Nussdorf v. United States*, 80 Fed. Cl. 122, 144 (2007). Moreover, as RCFC 26(b)(1) emphasizes, relevant information for purposes of discovery also includes information "reasonably calculated to lead to the discovery of admissible evidence." *Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1470 (9th Cir.1992); *see also Eggleston v. Chicago Journeymen Plumbers' Local Union*, 657 F.2d 890, 903 (7th Cir.1981), *cert. denied*, 455 U.S. 1017 (1982); *Petro-Hunt LLC v. United States*, 113 Fed. Cl. 80, 83 (2013). At the same time, "discovery, like all matters of procedure, has ultimate and necessary boundaries," *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (quoting *Hickman*, 329 U.S. at 507), and does not validate enquiries that are "wholly speculative," *Micro Motion, Inc. v. Kane Steel Co., Inc.*, 894 F.2d 1318, 1326 n.7 (Fed. Cir. 1990).

Defendant argues that the materials in question are irrelevant to plaintiff's judicial takings claim. That claim finds its roots in the Supreme Court's recent decision in *Stop the Beach Renourishment, Inc. v. Florida Dept. of Environmental Protection*, 130 S. Ct. 2592 (2010). That case addressed whether a Florida Supreme Court decision upholding Florida's Beach and Shore Preservation Act effected an unconstitutional taking of private property rights. *Id*. In sustaining that statute, a plurality of four Justices held that the Fifth Amendment should apply to the judiciary. The plurality maintained that if "a court declares that what was once an established right of private property no longer exists, it has taken that property." 130 S. Ct. at 2602; *see also*

*Smith v. United States*, 709 F.3d 1114, 1116-17 (2013).[2]  State court decisions that "merely clarify and elaborate property entitlements" are not judicial takings.  *Stop the Beach*, 130 S. Ct. at 2609.  The plurality proposed that if the Supreme Court finds that a state court has eliminated an established property right, the Court should invalidate the decision as applied to the litigants.  The state legislature would then have the option to "either provide compensation or acquiesce in the invalidity of the offending features of the Act."  *Id*. at 2607; *see also* Stephanie Stern, "Protecting Property Through Politics:  State Legislative Checks and Judicial Takings," 97 Minn. L. Rev. 2176, 2224 (2013).

      Plaintiff argues that the documents in question bear on whether its rights in the leases in question were "established" prior to the Fifth Circuit's decision in the earlier case.  *See* Assuming *arguendo* that the plurality's judicial takings analysis in *Stop the Beach* applies to decisions of Federal courts, it is difficult to grasp how any of the documents in question would be relevant either to whether plaintiff's property interests were "established" or to whether the Fifth Circuit's decision articulates a new rule of law.  The resolution of such questions requires the court to look to the law as it existed before and after the decision, not to the views of individual attorneys within the government agencies that were tasked with handling litigation involving similar claims.  Moreover, a review of the particular documents in question reveals that they provide essentially no insight into whether the drafters felt that the any of the legal principles associated with this case were "established," at least within the meaning of the Supreme Court's formulation in *Stop the Beach*.  Accordingly, the court concludes that, despite the broad range of allowable discovery under RCFC 26(b)(1), the documents in question are plainly irrelevant to the case at hand.

      In arguing otherwise, plaintiff relies heavily upon *United States v. Nebo Oil Co.*, 90 F. Supp. 73 (W.D. La. 1950), the decision rendered by the district court in the quiet title action filed by the United States to determine the owner of a particular mineral servitude within the 180,000 acre tract Bodcaw Lumber and Grant Timber granted to the United States.  Plaintiff claims that, in holding that the mineral servitudes were imprescriptible and belonged to Nebo Oil, the district court considered various documents generated by the National Forest Reservation Commission and the Secretary of Agriculture.  To be sure, various internal memoranda were considered by

---

[2]  In this regard, the plurality observed:

> The Takings Clause (unlike, for instance, the Ex Post Facto Clauses, *see* Art. I, § 9, cl. 3; § 10, cl. 1) is not addressed to the action of a specific branch or branches. It is concerned simply with the act, and not with the governmental actor ("nor shall private property **be taken**" (emphasis added)). There is no textual justification for saying that the existence or the scope of a State's power to expropriate private property without just compensation varies according to the branch of government effecting the expropriation. Nor does common sense recommend such a principle. It would be absurd to allow a State to do by judicial decree what the Takings Clause forbids it to do by legislative fiat.

130 S. Ct. at 2601.

the district court in rendering its opinion.  *See id*. at 91-92.  Of course, *Nebo Oil*, which predates the Supreme Court's opinion in *Stop the Beach* by sixty years, was not a judicial takings case.  Rather, the documents referenced in that opinion were considered as parol evidence bearing on the interpretation of the parties to the contract that transferred the property interest in question.  *Id*. at 92.  They were in no way considered in interpreting the scope of Louisiana Act 315 or any of the other laws at issue in that case and certainly were not used in a fashion remotely comparable to how plaintiff would like to use the documents in question.  *See id*. at 92; *see also Petro-Hunt, L.L.C. v. United States*, 105 Fed. Cl. 37, 40 (2012).  That case thus avails plaintiff naught.  Nor do any of the other cases cited by plaintiff persuade the court in the least that the documents in question are relevant.

Accordingly, based on the foregoing, the court finds that the documents in question are irrelevant and, under RCFC 26(b)(1), need not be produced.[3]  The court hereby **DENIES** plaintiff's motion to compel.[4]

**IT IS SO ORDERED.**

s/Francis M. Allegra
Francis M. Allegra
Judge

---

[3] Even if this were not the case, defendant has mounted a strong argument that six of the seven documents at issue are protected by either the attorney-client privilege or the work product doctrine.  The document that would not appear to be subject to those privileges – Document 7 – is merely a list of documents that had been assembled in a binder and represents not even a close case on relevancy grounds.  As to the six documents subject to privileges, there does not appear to be a waiver under Federal Rule of Evidence 502(a).  In that regard, plaintiff has not demonstrated that fairness requires these documents to be considered together with other documents that defendant has released in this and the prior case.  *See* Fed. R. Evid. 502(a); *see also* Fed. R. Evid. 502, adv. comm. notes (2007).

[4] Given the nascent state of the law on judicial takings, the court finds that plaintiff's motion was substantially justified and that costs under RCFC 37(a)(f)(B) are not owed.